681 So.2d 1373 (1996)
GENERAL MOTORS CORPORATION
v.
Johnny P. HOPPER.
1940777.
Supreme Court of Alabama.
July 12, 1996.
Rehearing Denied August 30, 1996.
D. Alan Thomas and Eugene D. Martenson of Huie, Fernambucq & Stewart, Birmingham, R. Chris Harvey of Strasburger & Price, Dallas, TX, for Appellant.
William W. Smith, R. Ben Hogan III and Pamela D. Beard of Hogan, Smith & Alspaugh, P.C., Birmingham, for Appellee.

ON APPLICATION FOR REHEARING
PER CURIAM.
The unpublished memorandum of affirmance issued on November 17, 1995, is withdrawn and the following opinion is substituted therefor:
The Tenth Judicial Circuit, which consists of Jefferson County, is divided into two independent divisions, the "Bessemer Division" and the "Birmingham Division." The Birmingham Division essentially operates as a judicial circuit separate from the Bessemer Division, which operates also as a separate judicial circuit. United Supply Co. v. Hinton Constr. & Dev., Inc., 396 So.2d 1047, 1049-50 (Ala.1981); Glenn v. Wilson, 455 So.2d 2, 3 (Ala.1984).
This case involves a resident of the Bessemer Division who, without objection, served as a juror in a Birmingham Division case, which was tried to a verdict in favor of the defendant, General Motors Corporation. After trial, the plaintiff, Johnny P. Hopper, moved for, and was granted, a new trial on the basis that a resident of the Bessemer Division had improperly served as a juror. At issue is whether the plaintiff was precluded from raising this issue after the trial, i.e., whether the plaintiff's failure to raise the issue before trial acts as a waiver of the issue.[1]
In Pogue v. State, 429 So.2d 1159 (Ala. Crim.App.1983), the Court of Criminal Appeals, citing Batson v. State, 216 Ala. 275, 113 So. 300 (1927), held that the defendant, whose jury in the Pickens County Circuit Court had included a juror who did not live in Pickens County, but in Lamar County, had waived any objection on that basis by not *1374 stating the objection before the jury was sworn. The court noted that the jury list had given for that juror an address suggesting that he was not a resident of Pickens County; the information given by that list reasonably could have led to the discovery of the fact of the juror's nonresidence. That court stated:
"[The juror's] proper address was given on the list of prospective jurors.... Since the objection could have been discovered with the exercise of due diligence at the time the jury was being qualified, it does not constitute a proper ground for a motion for a new trial. Although counsel was not required to conduct a voir dire examination which would be repetitious of that already conducted by the court, the fact remains that the ground of challenge could have been discovered before trial just as easily as it was discovered after trial."
429 So.2d at 1161.
We agree with this reasoning and observe that there are no material distinctions between this case and Pogue.[2] Here, as in Pogue, the nonresident's "proper address was given on the list of prospective jurors" and "the objection could have been discovered with the exercise of reasonable diligence at the time the jury was being qualified." Thus, any defect in the juror's qualifications, based on nonresidency, "does not constitute a proper ground for a motion for a new trial." Pogue, 429 So.2d at 1161.
The trial court erred in granting the plaintiff's motion for a new trial. The new trial order is therefore reversed, and the case is remanded.
APPLICATION GRANTED; UNPUBLISHED MEMORANDUM OF NOVEMBER 17, 1995, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, and INGRAM, JJ., concur.
MADDOX, SHORES, and COOK, JJ., concur specially.
MADDOX, Justice (concurring specially).
I agree with the majority in reversing the trial court's new trial order. I write to set out the facts and the reasons why I believe the trial court erred in granting the plaintiff's motion for a new trial.
The issue is whether a party who, before trial, does not object to the general qualifications of a juror can, in a post-trial proceeding, attack the qualifications of the juror and properly receive a new trial. The trial court ruled that the plaintiff could raise this issue post-trial and granted the plaintiff a new trial. I believe that this juror qualification issue should have been raised before trial, and that the plaintiff waived his right to challenge the juror's qualification to serve by not raising the issue before the trial.
This case arose in Jefferson County, which is divided into two court divisions, the Bessemer Division and the Birmingham Division. A juror residing in the Bessemer Division (also known as the Bessemer Cut-off) was summoned for jury service in the Birmingham Division. He was living in the Birmingham Division at the time of this trial.
Originally, I thought that the trial judge correctly held that the juror was disqualified and that the issue could be raised post-trial, and I voted to summarily affirm the order granting a new trial. However, after reading the briefs on application for rehearing and after re-examining the record, I am convinced that the trial court erred in granting the plaintiff's motion for a new trial. I concur with the majority to reverse the new trial order and to remand the cause, based on the following reasons:
(1) The record clearly shows that the plaintiff waived any right to challenge the juror;
*1375 (2) The juror actually lived in the Birmingham Division when the case was tried; furthermore, Ala.Code 1975, § 12-16-90, provides that jurors selected, drawn, and summoned under the provisions of the Code relating to the drawing, summoning, empaneling, etc., of grand and petit juries "must and shall in all respects be deemed legal and to possess in full in every respect power to perform all of the duties belonging to grand and petit jurors";
(3) Even assuming there was not a waiver of the challenge, the practice in Jefferson County, and in Barbour County, of selecting jurors from only a division of a court within a county, is contrary to the policy and intent of the people of Alabama and the Legislature respectively, in ratifying the Judicial Article to the Alabama Constitution (Amendment 328) and in enacting Act No. 594, Ala. Acts 1978, codified at Ala.Code 1975, §§ 12-16-55 through 12-16-64;
(4) The public policy of this State relating to jury service contemplates a uniform system throughout each county of the State, as evidenced by § 12-16-57, which specifically provides that the jury commissions for each county "shall compile and maintain an alphabetical master list of all persons in the county who may be called for jury duty, with their addresses and any other necessary identifying information"; and
(5) Any local acts of the Legislature providing for the selection and service of jurors would not be uniform; therefore, the Legislature intended to repeal those acts by the general repealer clause of Act No. 594, Ala. Acts 1978, codified at Ala.Code 1975, §§ 12-16-55 through 12-16-64.
I am aware of the provisions of Ala.Code 1975, § 12-16-44, and I am aware that it was not specifically repealed by Act No. 594, now codified as Ala.Code 1975, §§ 12-16-55 through 12-16-64. However, I believe, in view of the many references to "county" in Act No. 594, that the provisions of Act No. 59, Acts of Alabama 1939 (§ 12-16-44) was repealed by the general repealer clause.[3] Act No. 594 substantially adopted for this State the provisions of the Uniform Juror Selection and Service Act, and the whole intent of the Judicial Article and the acts the Legislature adopted pursuant thereto was to give uniformity of procedure. I will discuss this in greater detail in section II of this special concurrence.
There are two substantive reasons why the plaintiff is not entitled to a new trial. First, as the majority opinion states, the plaintiff waived any objection he might have had by failing to raise it before trial. Second, even assuming there was not a waiver, I believe this Court should re-examine the provisions of law relating to the drawing of jurors from a division of a court instead of county-wide.[4]

*1376 I.
I believe the plaintiff waived any objection he might have had as to the qualification of the juror to serve on the petit jury. I set out the following underlying facts, which allow a better understanding of this case. The plaintiff filed this product liability action against General Motors Corporation, alleging that the plaintiff Johnny P. Hopper had been injured because of a malfunction of the braking system in a 1987 model Buick Somerset automobile.
The juror in question, James Lowden, had been called for jury service in the Birmingham Division in 1992; he was called again in October 1994, when he served as a member of the trial jury in this case.[5] The record shows that for several years before October 1994,[6] Lowden had lived at Cross Creek Apartments, 909 Chapel Creek Drive, in Hoover. This Chapel Creek Drive residence, admittedly, was located in the Bessemer Division of the Tenth Judicial Circuit. The record shows that during this time, the juror bought his automobile tags in the Birmingham Division.
On October 1, 1994, Lowden moved from the Cross Creek Apartments on Chapel Creek Drive in Hoover, located within the Bessemer Division, to Tyler Circle in Hoover, located within the Birmingham Division.[7] Therefore, Lowden was actually living within the Birmingham Division (the division in which the case was tried) at the time he served on the jury in this case, beginning October 17, 1994, but he had not lived in that Division for all of the 12 months preceding the trial.
The record clearly shows that Lowden, who held a master's degree in education, believed that he was, in fact, a resident of the Birmingham Division during all of the years that he lived in Hoover. He also believed that he was fully qualified to serve on the Birmingham Division jury on October 17, 1994. The confusion that is caused by asking jurors to determine in which division they *1377 live is evident from the record.[8]
After a seven-day trial in the Birmingham Division of the Tenth Judicial Circuit (Jefferson County), the jury returned a verdict in favor of General Motors. After the jury verdict was returned, and within the time permitted for a party to file post-trial motions, the plaintiff's attorney learned that juror Lowden had not been a resident of the Birmingham Division for the 12 months preceding the date of the trial. The trial judge conducted a lengthy hearing, heard the testimony of several witnesses, and concluded that the plaintiff was entitled to a new trial.
The plaintiff's fundamental argument is that the trial judge correctly granted a new trial because Lowden had not resided in the Birmingham Division for the 12 months preceding the trial of the case, and, therefore, was disqualified, as a matter of law, to serve. I disagree with this argument. Based on the facts in this record, however, I believe that even if Lowden was disqualified, the plaintiff waived his right to challenge Lowden's qualification.
When the petit jury for this case was qualified generally, neither the plaintiff nor his attorney was present. Judge Arthur Hanes, who qualified the jury generally, but who did not try the case, testified at the hearing on the motion for new trial that he asked the jurors if they had been residents of the Birmingham Division of the Tenth Judicial Circuit for the past 12 months.[9] At the post-trial hearing conducted by Judge William Wynn, who actually tried the case, Lowden testified that he did not recall Judge Hanes's question, but testified that he would have answered the question negatively if he had been directly asked if he was a resident of the Bessemer Division.[10] Furthermore, during voir dire examination, the juror introduced himself as being a resident of Hoover,[11] and his Chapel Creek Drive address, which was physically located within the Bessemer Division, was listed as his residence on the juror list. This list was available to the plaintiff before the trial and during voir dire. In other words, the fact that at one time Lowden did not physically live in the Birmingham Division was apparent from the face of the juror list.
If the residence of the juror was of such paramount importance to the plaintiff as to be grounds for a new trial, then the plaintiff should have questioned Lowden's residence during voir dire examination. The plaintiff's counsel did not ask Lowden where he lived, whether he lived in the Bessemer Division or in the Birmingham Division of the circuit, or any questions from which counsel could determine which division the juror lived in. Instead, the plaintiff's counsel chose to ask Lowden numerous questions pertaining to his knowledge of the Alabama Business Council, his relationship with three Birmingham attorneys, the bumper stickers on his *1378 car, and problems he had experienced with an old Ford Fairlane automobile.
In Alabama, the law is clear that a post-trial showing of juror disqualification does not automatically result in allowing a new trial at the request of the losing party. To the contrary, a residential disqualification is deemed to have been waived if it is first brought to the court's attention post-trial. In Pogue v. State, 429 So.2d 1159 (Ala.Crim. App.1983), the Court of Criminal Appeals held that in a post-trial proceeding a defendant could not challenge a juror who had served on a jury in Pickens County, but who lived in Lamar County. In Pogue, the juror's address on the jurors' list was "P. O. Box 446, Millport, Alabama." The Court took judicial notice that Millport was in Lamar County, not Pickens County, and held that this fact gave notice to the attorneys of a potential residential disqualification. In Pogue, the Court said:
"Although the incompetency of a juror because he is not a resident of the county in which the trial was had is ground for a challenge for cause, `the right to challenge ends, when the persons selected are sworn as jurors.' Carson v. Pointer, 11 Ala.App. 462, 465, 66 So. 910 (1914), quoting from Henry v. State, 77 Ala. 75, 77 (1884). Carson held that although a juror on his voir dire examination by the court stated that he was a resident of the county, and the appellant did not discover the contrary until after the verdict, the verdict could not then be impeached. See also the following from Batson v. State, 216 Ala. 275, 280, 113 So. 300 (1927).
"`That juror Davies was not a citizen of the county and state was a ground of challenge as a juror .... (authorities omitted) It did not invalidate the verdict and judgment rendered by his not being challenged. Kohl v. Lehlback, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed. 432; Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 47 L.Ed. 119.... The objection that the juror is an alien comes too late after the jury was qualified generally by the court, as indicated, and put to and accepted by the parties. Herndon v. State, 2 Ala.App. 118, 56 So. 85; Carson v. Pointer, 11 Ala.App. 462, 66 So. 910.'
"Golden v. State, 39 Ala.App. 361, 370, 103 So.2d 52, cert. denied, 267 Ala. 456, 103 So.2d 62 (1958), `pretermit(ed) any consideration as to whether or not Carson v. Pointer ... is still valid' since the question was unlikely to arise on a new trial. Because `[t]he decisions of the supreme court shall govern the holdings and decisions of the courts of appeals,' Ala.Code Section 12-3-16 (1975), Carson must be upheld."
429 So.2d at 1160-61.
In Pogue, the Court further held that there was an additional reason why the rule of Carson v. Pointer, 11 Ala.App. 462, 465, 66 So. 910 (1914), should stand and be applied in that case:
"[H]is proper address was given on the list of prospective jurors. When defense counsel discovered the ground for challenge he had no more information before him than he did when he accepted the jury. Since the objection could have been discovered with the exercise of reasonable diligence at the time the jury was being qualified, it does not constitute a proper ground for a motion for a new trial. Although counsel was not required to conduct a voir dire examination which would be repetitious of that already conducted by the court, the fact remains that the ground of challenge could have been discovered before trial just as easily as it was discovered after trial."
429 So.2d at 1161 (citations and emphasis omitted).
The waiver or preclusion rule as articulated in Pogue was revisited in two 1993 decisions of this Court, Holland v. Brandenberg, 627 So.2d 867 (Ala.1993), and McBride v. Sheppard, 624 So.2d 1069 (Ala.1993). Both of these cases follow the well-established rule that post-trial attacks on a juror's qualifications must fail where the issue in question was not raised in the jury-selection process.[12]
*1379 In Holland, a juror failed to disclose a prior felony conviction, and the defense sought a new trial based on this alleged juror disqualification. Distinguishing Chrysler Credit Corp. v. McKinney, 456 So.2d 1069 (Ala.1984), the Holland court, through an opinion written by Justice Adams, held that the juror disqualification issues, raised after the fact, had been waived. In Holland, counsel for the objecting party asked no voir dire questions on the qualification issue; therefore, the Court held that the qualification issue, which was not raised until after the trial of the case, had been waived. The Court said:
"Failure to use due diligence in testing jurors as to qualifications or grounds of challenge is an effective waiver of grounds of challenge; a defendant cannot sit back and invite error based on a juror's disqualification. Beasley v. State, 337 So.2d 80 (Ala.Crim.App.1976). We have examined the record and have determined that the defendant failed to exercise due diligence in ascertaining the qualifications of the juror; he cannot now ask this Court to correct this failure."
627 So.2d at 870.
Shortly after Holland was decided, this Court in McBride, supra, considered whether the statutory literacy requirement had been waived. McBride involved a medical malpractice action in which the losing plaintiff attacked the verdict on the basis that one juror was disqualified by virtue of his inability to "read, speak, understand and follow instructions given by a judge in the English language," as required by § 12-16-60(a)(2). Again, distinguishing Chrysler Credit, the Court in McBride explicitly stated that Alabama has never mandated an automatic new trial every time a juror might be shown to have been disqualified under the terms of the statute. Instead, the Court, following the Holland rule, held that counsel's lack of due diligence in testing juror qualifications constituted a waiver.
The record makes it clear that plaintiff's counsel did not inquire as to Lowden's residence until well after the trial. Holland and McBride are analogous to this case in that in each of those cases the juror's disqualification was not made an issue until post-trial.
It is undisputed that Lowden's Cross Creek address shown on the jury list was within the Bessemer Division, but it is also undisputed that Lowden had been summoned previously to serve in a Birmingham Division trial. Alabama Code 1975, § 12-16-90, states that jurors selected, drawn, and summoned under the provisions of the Code relating to the drawing, summoning, empaneling, etc., of grand and petit juries "must and shall in all respects be deemed legal and to possess in full in every respect power to perform all of the duties belonging to grand and petit jurors." With this knowledge (actual or constructive), and in view of the presumption of law, the plaintiff's trial counsel failed, when the jury was being selected, to ask any questions pertaining to Lowden's residence, but raised the issue for the first time in a post-trial motion. As seen in Pogue, a party's knowledge at voir dire of a juror's residential disqualification can give rise to a waiver. Similarly, in Hood v. Kelly, 285 Ala. 337, 231 So.2d 901 (1970), the Court held that knowledge at the voir dire stage of kinship of a juror could not be used post-trial to set aside the verdict and obtain a new trial. Therefore, I conclude that the plaintiff has waived his right to object to Lowden's service as a juror and that the trial court erred in granting a new trial.
In Hood, the Court said that, although it could not find an Alabama case directly on point on the question, there were several cases stating that a good ground for challenge could be waived, citing Lyman v. State, 45 Ala. 72 (1871); Batson v. State, 216 Ala. 275, 113 So. 300 (1927). The Court *1380 quoted from Oliver v. Herron, 106 Ala. 639, 17 So. 387 (1895), as follows:
"`... The right of jury trial is a personal right, of which no person can be deprived against his will, but there is neither constitutional nor statutory provision which prohibits him from waiving his constitutional privilege in civil actions. Movants had personal notice of the condition of the juror during the trial. If they intended to raise an objection to his competency or qualifications, it was their bounden duty to have done so at the time. Having concluded the case, in the face of such notice, and taken the chances of a verdict in their favor, they will be conclusively held to have waived the objection to the juror.'"
285 Ala. at 339, 231 So.2d at 904.
Insofar as I can tell, this Court has never affirmed an order for a new trial granted on the basis of residential disqualification where, as here, the attorney had either actual or constructive knowledge of the juror's potential residential disqualification, yet waited until post-trial to first raise that issue. See Bufford v. State, 382 So.2d 1162 (Ala.Cr. App.), cert. denied, 382 So.2d 1175 (Ala.1980) (a Dallas County resident could properly sit as a juror in a Wilcox County felony homicide trial). In Nordan v. State, 143 Ala. 13, 19, 39 So. 406, 408 (1905), the defendant objected on the basis that a juror lived in a division of the judicial circuit outside the division in which he was summoned to serve. The Court held that this objection was not well taken, holding that if the juror was "otherwise qualified, and was a resident householder ... of the county, he was a competent juror."
Section 6 of Act No. 594, now codified as Ala.Code 1975, § 12-16-60, provides:
"Qualification of jurors. (a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
"(1) is a citizen of the United States and a resident of the county for more than 12 months, [and is] over the age of 19 years...."
(Emphasis added.) The juror in this case meets each of the above-stated qualifications, and, having been summoned to serve in the Birmingham Division, "must and shall in all respects be deemed legal and to [have] possess[ed] in full in every respect power to perform all of the duties belonging to grand and petit jurors." § 12-16-90(b), Ala.Code 1975.
Clearly, Alabama has no statutory provisions mandating automatic disqualification of a potential juror merely because he or she lives in another division of the forum county; consequently, it would be incumbent upon the party challenging a juror to show "probable prejudice."
It is significant that the trial judge overruled all of the plaintiff's other post-trial motions, including those based on alleged pretrial publicity, the contention that the verdict was against the great weight of evidence, the argument that counsel made inflammatory statements, and other such grounds. The only basis for the order granting a new trial was the juror's alleged residential disqualification. On this issue, the trial court made no findings of "probable prejudice." In my opinion, Alabama law requires proof of "probable prejudice" in order to sustain the granting of a new trial:
"`"Although a defendant has a right to have questions answered truthfully by prospective jurors, the failure of a juror to make a proper response to a question regarding his qualifications does not automatically entitle a defendant to a new trial. The proper inquiry by this court in such cases is whether the appellant's rights were [probably] prejudiced by the juror's failure to respond properly."'"
Parish v. State, 480 So.2d 29, 31 (Ala.Cr.App. 1985), quoting Brown v. State, 392 So.2d 1248 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1266 (Ala.1981); see also, Vaughn v. State, 395 So.2d 97 (Ala.Cr.App.1980).
In analyzing the "probable prejudice" test, the trial court must consider a variety of factors, which may vary from case to case. Such factors might include a prospective juror's inadvertence or willfulness in falsely answering voir dire questions or refusing to answer such questions; the failure of a juror to recollect; and the materiality of the matter *1381 inquired about. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970). Moreover, the Court of Criminal Appeals has explicitly held that mere nonresidence alone is insufficient to set aside the verdict: "Nonresidency... does not impute prejudice per se," and "there is no inherent prejudice attributed to a trial by a nonresident." Bufford v. State, 382 So.2d 1162, 1172-73 (Ala.Cr.App.1980).
The holding in Bufford, where no "probable prejudice" was found, has been consistently followed by every subsequent Alabama case considering the issue of juror residential qualification. One line of cases seems to adopt a "waiver" or "preclusion" rationale, as illustrated in Pogue. The other line of cases focuses not entirely on the waiver issue, but, rather, on whether the complaining party proves "probable prejudice" resulting from the juror's residential disqualification. For example, in Huckabaa v. State, 475 So.2d 891 (Ala.Cr.App.1985), the Court of Criminal Appeals upheld the denial of the defendant's new trial motion, which had been based on the fact that one of the jurors was apparently a resident of Virginia, yet sat on the Covington County jury. Following the rationale of Pogue and Bufford, the Huckabaa Court found no proof of prejudice and affirmed the judgment based on the jury's verdict. 475 So.2d at 893.
Applying those principles of law to the facts of this case, I find no probable prejudice occurring by reason of the juror's service. On the contrary, the proof is otherwise. This case is unlike Chrysler Credit Corp. v. McKinney, 456 So.2d 1069, 1071-72 (Ala.1984), in which evidence presented in support of a new trial motion showed that a juror was incapable of understanding the evidence, was illiterate, and was unable to hear questions posed to him during the course of trial. In Chrysler Credit, the Court stated:
"There were numerous items of documentary evidence submitted at trial. Much of this evidence was explained during the testimony at trial, but the juror's hearing impairment might have deprived him of the benefit of that testimony. [The defendant] `should not be subjected to the peril of having a juror put upon [it] who is disqualified to sit as a juror in the case.'"
456 So.2d at 1072.
Based on the foregoing, I conclude that the plaintiff was at least constructively notified that Juror Lowden had not lived in the Birmingham Division for the 12 months preceding the trial, even though this was the second time he had been summoned for jury service in the Birmingham Division. The plaintiff cannot now claim that the residence of the juror "on the other side of the division line" so affected his right to a fair trial as to warrant a new trial, when he did not use due diligence to inquire of the juror whether he actually had been a resident of the Birmingham Division for the previous 12 months. Clearly, the plaintiff did not exercise due diligence in ascertaining the qualifications of the juror to serve on the petit jury and, therefore, waived his right to challenge the juror's qualification to serve. Furthermore, the plaintiff failed to affirmatively prove that probable prejudice resulted from Lowden's service on the jury, so as to support the grant of a new trial.

II.
Even assuming that the plaintiff did not waive the issue of Juror Lowden's residence, I believe a new trial was not warranted on the basis that the jury selection procedures that were used in this case, and which are used in some other counties with divisions, are not uniform with the provisions of the Jury Selection Act and the procedures used to draw and select juries in this State at this time. The plaintiffs rely strongly on the provisions of § 12-16-44 as authority to sustain the trial court's grant of the new trial. Although the Legislature did not specifically repeal the provisions of what is now § 12-16-44 when it adopted Act No. 594, the Legislature did include in that Act a general repealer provision, and I believe that the local and general laws with local application that provide for the selection of jurors from a division of a circuit court within a county were repealed by Act No. 594, Ala. Acts 1978, codified at Ala.Code 1975, §§ 12-16-55 through 12-16-64. Clearly, such an interpretation of the jury laws would make the *1382 drawing, selecting, and service of jurors in this State uniform and would foster the policy of the Legislature expressed in §§ 12-16-54 and -55, and, furthermore, would carry out the intent of the people of Alabama to set up a judicial system that is uniform.
The policy of Act No. 594 was stated in § 1 of that Act and now appears in the Code as § 12-16-55, which reads as follows:
"It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose."
(Emphasis added.) On several occasions, this Court has addressed the purpose of Act No. 594, and although most of what this Court has written has been written in criminal cases, it is equally applicable to civil cases. In Beck v. State, 396 So.2d 645 (Ala. 1980), this Court discussed the policy of the 1978 Jury Selection Act, as follows:
"The possibility of racial or other bias in the trial or sentencing process has greatly diminished in Alabama in the last several years. To begin with, the entire judicial system was revamped and Alabama is now recognized nationally as having one of the best judicial systems in the nation. The Death Penalty Act was passed by a legislature which was reapportioned under a federal court order which insured representation of minorities by a wholesale redistricting of the state. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Furthermore, Alabama has adopted a Jury Selection Act which declares, as policy, `that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.' Code 1975, § 12-16-55. Discrimination in jury selection is specifically prohibited. Code 1975, § 12-16-56."
396 So.2d at 653-54 (emphasis added).
In other cases, this Court has stated that "the Legislature intended, in adopting this public policy, that our trial juries should be selected from a list which contains a fair cross section of the [population of the] area served by the court, and that any form of discrimination against a particular juror on account of race, color, religion, sex, national origin, or economic status is prohibited," Ex parte Branch, 526 So.2d 609, 618-19 (Ala. 1987); see Ex parte Jackson, 516 So.2d 768 (Ala.1986), and that policy is consistent with the due process requirements of the Federal Constitution. It has also been held that the "fair cross section" requirement of the statute "is analogous" to the "fair cross section" requirement derived from the Sixth Amendment to the United States Constitution, and that "`petit juries must be drawn from a source fairly representative of the community.'" Rayburn v. State, 495 So.2d 733, 734 (Ala.Crim.App.1986), quoting Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975). I do not think that it could be fairly debated that the "area to be served by the court" could be interpreted to refer to anything other than a county, because § 12-16-57, codifying Act No. 594, provides that "[t]he jury commission for each county shall compile and maintain an alphabetical master list of all persons in the county who may be called for jury duty, with their addresses and any other necessary identifying information." (Emphasis added.)
The whole concept and purpose of the Judicial Article of our Constitution was the establishment of a Unified Judicial System, with the various courts bearing uniform jurisdiction and with each construing rules of procedure that would be uniform statewide. The jury commission for each county in Alabama compiles and maintains a master list of the names or identifying numbers of all prospective jurors from the county-at-large, except Jefferson County (where the list is compiled separately from the Bessemer Division and the Birmingham Division) and Barbour County (where the list is compiled separately from the Clayton Division and the Eufaula *1383 Division). The Administrative Office of Courts, using computers, summons all jurors in all counties of Alabama from the master lists provided by the jury commissions. All the forms and rules that this Court has approved are based on the county as a whole, not divisions within the county.
A fair interpretation of Act No. 594[13] suggests that the jury lists should be compiled and the selection of juries should be made county-wide, not in a division of a county. Consequently, it appears to me that Local Acts 1900-01, No. 768, § 36, which provided for the selection of juries from a division of the Circuit Court of Jefferson County,[14] was repealed by the general repealer clause of Act No. 594, Ala. Acts 1978, now codified as Ala.Code 1975, §§ 12-16-55 through 12-16-64.[15]

CONCLUSION
To affirm the order of a new trial would invite attorneys in multi-division counties, whether representing plaintiffs or defendants, to close their eyes to error. The defendant addresses this in its brief in support of its application for rehearing, as follows:
"Under the authority of this case, it is now lawful (and will unquestionably become even more widely practiced as news of this case circulates [along] the lawyer `grapevine') that a lawyer [trying a case in the Birmingham Division] can `close his eyes' to whether a juror resides in the Birmingham or Bessemer [Division] of Jefferson County, ask no questions about this, be absent from the Court's qualifying of the jury pool where such questions are asked, and then if he wins the case, remain forever silent. If he loses, as here, the lawyer can then examine his jury list more carefully, and if he lucks upas hereand finds one of the members actually residing in the Bessemer Division, he obtains a new trial."
Brief of Appellant on Application for Rehearing, p. 3. Although I cannot speak to the truth of this statement, it strikes me as very logical that such could occur.
Although this Court has not previously discussed the juror residence question as it applies to the Bessemer Division, it has considered the venue question arising in other counties, which has come to the Court from time to time over the years. The territorial distinction between the Bessemer and Birmingham Divisions of Jefferson County has been determined not to be jurisdictional in nature, but only to affect venue.
There has been confusion about the application of the enabling legislation creating the Bessemer Division, at other times and involving other issues, and some Justices have been of the opinion that it was jurisdictional in nature, and, therefore, that an action erroneously filed in the Birmingham Division for a Bessemer Division tort was subject to dismissal for want of "territorial jurisdiction." See generally, C. Cleveland, "Territorial Jurisdiction of the Circuit Court of the Bessemer Cut-off," Vol. 3, No. 2, Birmingham Bar Association Bulletin (Summer 1992), Glenn v. Wilson, 455 So.2d 2 (Ala.1984). It appears to be settled today that, as to transitory tort claims, the Bessemer Division Circuit Court has no exclusive jurisdiction and that it is incumbent upon the party opposing trial in a particular division of the Jefferson County Circuit Court to raise the issue through a timely filed motion to transfer:
"The Bessemer cutoff legislation does not diminish the general jurisdiction of other circuit courts, either in Jefferson or other counties. Therefore, in those Jefferson County cases subject to transfer to the other division pursuant to 12-11-11, a claim for transfer based on the improper *1384 filing may be waived, just as in a suit filed in some other county the parties may waive claims of improper venue."
Glenn, 455 So.2d at 4-5. See also, Birmingham Federal Savings & Loan Ass'n v. Buddy's Marineland, Inc., 545 So.2d 16 (Ala. 1989); Ex parte Birmingham Southern R.R., 473 So.2d 500 (Ala.1985). By analogy to the Bessemer/Birmingham Division venue cases, it logically follows that mere residence in the Bessemer Division is in no way a ground for automatic disqualification, and, indeed, residence in the Bessemer Division in no way abrogates the general statutory qualification requirements of § 12-16-60. In fact, as I have stated, it can be argued that the Uniform Jury Selection and Service Act repealed all laws and parts of laws inconsistent with that Act, insofar as jury selection and service are concerned.
After the adoption of the Judicial Article and the rules of procedure, it should be clear that the perpetuation of divisions tended to further nonuniformity in many cases. See Ex parte Chrysler Corp., 659 So.2d 113 (Ala. 1995), where the Court held:
"Insofar as civil actions are concerned, Barbour County is a single entity, and a cause of action arising in any geographical part of Barbour County can be filed in either courthouse in Barbour County, without violating the general venue laws of the state. The mere fact that defendants residing on one side or the other of a line have a waivable right, not unlike the right given to all parties by the general forum non conveniens statute (§ 6-3-21.1), to have the action tried in the courthouse in the division where the defendant, individual or corporate, resides, does not violate any constitutional provision."
659 So.2d at 117. The reasoning used in that case is applicable to the present situation, in which a juror comes from the "other side of the line," but who meets all the general qualifications set out in § 12-16-60 and who was summoned for service in the Birmingham Division and was presumed to be qualified.
Finally, Rule 1 of the Alabama Rules of Civil Procedure states that the Rules of Civil Procedure shall be construed to assure the just, speedy, and inexpensive determination of every case on its merits. To interpret the procedural rules in a manner that would grant the plaintiff a new trial, under the facts and circumstances of this case, would violate the very spirit of Rule 1 and would be the antithesis of just, speedy, and inexpensive determination of this action on its merits.
COOK, Justice (concurring specially).
The trial court granted a new trial on the motion of the plaintiff, Johnny Hopper, on the ground that the cause had been tried before a jury that included James Lowden, whose place of residence, Hopper contended, did not qualify him to serve on the jury. Hopper contends that he did not discover this defect until after the verdict and judgment. Although I originally concurred in a judgment affirming the trial court's order granting a new trial, on application for rehearing I have reconsidered the arguments and issues presented. I concur fully in today's action reversing that order. The law in this state is, and should remain, that a party must object, before the jury is sworn, to the empaneling of a juror who resides outside the area "served by the court"[16] in order to raise the absence of residential qualification as a ground for a new trial, where the situs of the juror's residence is discoverable through due diligence.
Justice Maddox concurs specially in a two-part opinion. In Part II, he concludes that the trial court erred as a matter of law in granting a new trial, because, in his view, the statutory scheme bifurcating the Tenth Judicial Circuit into the Bessemer and Birmingham Divisions has been repealed. I write to express my disagreement with Justice Maddox's reasoning and conclusion in Part II of his special concurrence.
Jefferson County, which makes up the Tenth Judicial Circuit, is divided into two independent divisionsthe Bessemer and *1385 Birmingham Divisions. This division is brought about pursuant to Act No. 213, 1919 Ala. Loc. Acts 62; amended by Act No. 362, 1935 Ala. Loc. Acts 216, and Act No. 199, 1943 Ala. Loc. Acts 105. Act No. 362 ("the Act") "`in effect created two circuit courts within one county.'" Glenn v. Wilson, 455 So.2d 2, 3 (Ala.1984). "`By the Act, the Circuit Court holding in Bessemer was given the same power exercised by the Tenth Judicial Circuit [holding in Birmingham], but it could exercise such power only for actions arising in its territorial boundary.'" Id. Section three of the Act specifically provides for the empaneling of grand juries, which are to "exercise and possess all of the jurisdiction and powers ... of the several Circuit Courts of this State, which said ... powers... shall be exclusive in, limited to, and extend over the ... territory in Jefferson County ... holding at Bessemer." Act No. 768, 1900-01 Ala. Loc. Acts 1854, amended by Act No. 446, 1903 Ala. Loc. Acts 472 and Act No. 172, 1915 Ala. Loc. Acts 241, established "the city court of Bessemer." Act No. 768, § 32, authorized the Bessemer City Court to "organize and empanel" both grand and petit juries, which juries were to be "drawn or selected from the qualified jurors residing in the ... territory" of the Bessemer Division. Pursuant to Act No. 217, 1915 Ala. Acts 279, the Bessemer City Court was "consolidated into the circuit court" of the Bessemer Division. Soon after these sections were enacted, it was settled that jurors hearing cases in the Bessemer Division were to be drawn "from a box containing only the names of those jurors residing in" the "territory" assigned to that division. Porter v. State, 20 Ala.App. 74, 74, 101 So. 97, 98 (1924); see also Junior v. State, 47 Ala.App. 518, 257 So.2d 844 (1971), cert. denied, 407 U.S. 923, 92 S.Ct. 2473, 32 L.Ed.2d 810 (1972); Hardeman v. State, 19 Ala.App. 563, 99 So. 53 (1924).
Justice Maddox correctly recognizes that "the Administrative Office of Courts ... follow[s] the traditional method for selecting... jurors ..., and that the Office of Jury Management follows the procedure that was originally outlined in the 1901 Act creating the Bessemer Division, in determining which jurors will serve in" the respective divisions. 681 So.2d at 1375 n. 4. He proposes, however, that the statutory scheme outlined above, upon which the selection procedures are based, was repealed by Act No. 594, § 12, 1978 Ala. Acts 712, codified at Ala.Code 1975, §§ 12-16-55 to -64. Based on this premise, he concludes that the only residence requirement for jurors serving in either Jefferson County division is that they reside in Jefferson County. He would hold, therefore, that the fact that Lowden had not lived in the Birmingham Division for at least 12 months before trial was immaterial. I disagree with this conclusion because I disagree with his construction of Act No. 594.
Specifically, Act No. 594, § 12, simply provides: "All laws and parts of laws in conflict with the provisions of this act are to the extent of such conflict hereby repealed." "General repealer" clauses, of which § 12 is an example, are, "`in legal contemplation,... nullit[ies]. Repeals must either be expressed or result by implications.... [A] general repealing clause cannot be deemed an express repeal because it fails to identify or designate any act to be repealed.'" Merrell v. City of Huntsville, 460 So.2d 1248, 1250 (Ala.1984) (emphasis added). "`It cannot be determinative of an implied repeal for it does not declare any inconsistency but conversely, merely predicates a repeal upon the condition that a substantial conflict is found under application of the rules of implied repeals.'" Merrell, 460 So.2d at 1250-51. "If," moreover, the "inclusion [of a general repealer clause] is more than mere mechanical verbiage, it is more often a detriment than an aid to the establishment of a repeal, for such a clause is construed as an express limitation of the repeal to inconsistent acts." 1A Sutherland, Statutes and Statutory Construction § 23.08, at 329 (4th ed.1985) (emphasis added, footnotes omitted). Thus, if the statutory scheme limiting the jury pools to residents of the divisions in which the courts of Jefferson County sit has been repealed, it has been repealed only by implication.
The rules of construction in this respect are clear: "Repeal of a statute by implication is not favored ... and a prior act is not repealed unless provisions of a subsequent *1386 act are directly repugnant to the former." 460 So.2d at 1251. Moreover, we have stated:
"When provisions of general law, applicable to the entire state, are repugnant to provisions of a previously enacted special law, applicable in a particular locality only, passage of the general law does not operate to repeal the special law, either in whole or in part, unless repeal is provided for by express words or arises by necessary implication."
Vaughan v. Moore, 379 So.2d 1240, 1241 (Ala.1979). "[L]egislative intent is a crucial factor in determining whether two statutes are irreconcilable so as to require repeal." Merrell, 460 So.2d at 1251.
Legislative intent to repeal the statutory scheme at issue here is not discernible from Act No. 594. On the contrary, § 1 (codified at § 12-16-55), declares it to be "the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court." (Emphasis added.) This statute evidences on its face that the legislature had in view the special jury selection procedures already in place for Jefferson County. The use of the phrase "area served by the court," rather than simply "the county," indicates careful and deliberate drafting.
Indeed, Act No. 594, § 11, expressly and specifically repeals Ala.Code 1975, §§ 12-16-2; 12-16-4 and -5; 12-16-39; and 12-16-41 to 43. Given the maxim expressio unius est exclusio alterius, that is, "the expression of one thing is the exclusion of another," Black's Law Dictionary 521 (6th ed.1990), § 11 provides additional evidence that the legislature did not intend to repeal by implication vast, unspecified legislative schemes.[17]
Furthermore, nothing in Act No. 594 is inherently repugnant to Jefferson County's jury selection procedures. Sections containing the word "county" are equally applicable and adaptable to the selection procedures used in Jefferson County.
Considering these well-established rules of statutory construction, I refuse to construe Act No. 594 so broadly as to have it repeal the statutory scheme applicable to Jefferson County, lest I "legislate" by construction. Consequently, I concur in the holding and rationale of the majority, and I expressly disagree with the reasoning and conclusions expressed in Part II of Justice Maddox's special concurrence.
SHORES, J., concurs.
NOTES
[1] The parties raise several other issues. However, because we resolve this case on this waiver issue, we do not reach the other issues argued by the parties.
[2] The record here indicates that the fact that a juror was a nonresident of the Birmingham Division was not actually discovered until after the trial. However, we observe that to dismiss the reasoning of Pogue could invite mischief. It would, perhaps, encourage a party who did know, or suspect, that a particular juror was a nonresident to gamble on the outcome of the trial, with the intent that if the party lost at trial, he or she might secure an opportunity to try the case before another jury.
[3] See §§ 12-16-59 and 12-16-60. I realize that § 12-16-55 uses the term "fair cross section of the population of the area served by the court," and some could interpret that term to apply to a division of a court. But if read in pari materia with the other sections of Act No. 594, especially § 12-16-60, which lists the qualifications of jurors and requires only that a juror be a resident "of the county," § 12-16-55 should be read to apply to the entire county.
[4] Although the "county" is the political subdivision referred to in Act No. 594, it is apparent from the record that the Administrative Office of Courts has followed the traditional method for selecting and summoning jurors for jury service, and that the Office of Jury Management follows the procedure that was originally outlined in the 1901 Act creating the Bessemer Division, in determining which jurors will serve in the Birmingham Division and which jurors will serve in the Bessemer Division. This 1901 Act provided:

"Be it further enacted, that all persons liable to jury duty residing in the territory herein described [the Bessemer Division], and whose names are not included in the lists or boxes for Jefferson County, shall be removed therefrom and placed in a separate box to be used for the said city court of Bessemer, ..."
Local Acts 1900-01, No. 768 § 36 (emphasis added).
In the subsequent act that established the circuit court of the Bessemer Division, this section was not changed. See Amended Local Acts 1935, No. 213.
According to the record, the Bessemer Division divides seven Jefferson County zip codes. An assistant court administrator and jury coordinator stated in a sworn affidavit that the Office of Jury Management in Jefferson County manually compares a master list of jurors with a list of the Bessemer households in the affected zip codes. The names of the potential jurors who live in the Bessemer Division are highlighted, and the master list is sent to the Administrative Office of Courts in Montgomery, where the information is put into a computer. This procedure, except for the new technology, is essentially the same as the procedure used in 1901 when the Bessemer Division was first established. The only differences in the 95-year-old procedure arise from the ratification of the Judicial Article, the adoption of the Uniform Jury Selection and Service Act, and the advent of the capacity to draw and summon jurors statewide by using the mainframe computer at the Administrative Office of Courts. Based on the provisions of the Uniform Jury Selection and Service Act, and in view of the administrative procedures that are now in use for selecting jurors, juror lists are now maintained, and jurors are summoned for service in the various circuits, by the Administrative Office of Courts.
I recognize that in some counties in Alabama there are two courthouses, as in Jefferson, Coffee, Winston, St. Clair, Talladega, Marshall, Tallapoosa, and Barbour Counties. The information I have received from the Administrative Office of Courts indicates that the circuit courts meet in both courthouses only in Jefferson, St. Clair, Barbour, Coffee, Marshall, and Tallapoosa Counties; juries are drawn from within the separate divisions only in Jefferson and Barbour.
The question of drawing jurors from a division within a county was specifically challenged, by a petition for the writ of mandamus, in Ex parte R.J. Reynolds Tobacco Co., et al., [1941760, August 30, 1995, petition denied]. I dissented in that case and prepared a written dissent. However, the written dissent was not entered of record. Subsequently, a second petition was filed in this action, Ex parte R.J. Reynolds Tobacco Co., et al., [1950091, January 31, 1996, petition dismissed]. I concurred specially in that second order, which dismissed the mandamus as moot, and appended my previously prepared dissent to my special concurrence. In that dissent, I noted that Act No. 594 essentially adopted the provisions of the Uniform Jury Selection and Service Act, and that it refers only to a "county" and not to court divisions within a county. Although the Court did not issue opinions in these two actions and the clerk's orders denying these petitions were not published, the orders and my special concurrence to the January 31, 1996, order, with my dissenting opinion attached, are part of the official record and are available through the clerk's office.
[5] Persons selected for juror service are electronically selected by the Administrative Office of Courts, and the summonses are mailed from the Administrative Office of Courts.
[6] The case action summary sheet shows that the case was first set for trial on January 24, 1994, and that it was reset for trial on August 1, 1994, and October 17, 1994, when it was actually tried.
[7] His Tyler Circle residence was within the city limits of Hoover, and it had the same zip code as his Chapel Creek Drive residence.
[8] Testifying at the hearing on the motion for new trial, Judge Arthur Hanes stated that, upon instructing the potential jurors on the location of the dividing line, he said that "[t]here are some unusual areas in the southern part of Jefferson County," and told jurors "at the end" if they had any questions about which division they lived in to come forward.
[9] Interestingly, Judge Hanes testified that he generally instructed the potential jurors as to how they could tell in which Division they lived, as follows:

"You are serving this week in the Tenth Judicial Circuit. The Tenth Judicial circuit consists of Jefferson County in its entirety. But Jefferson County is divided into two divisions, the Birmingham Division and the Bessemer Division, sometimes called the Bessemer Cut-off. You probably know whether you live in the Birmingham Division or the Bessemer Division. One way you can test it is where you buy your car tags or [pay your] property taxes. If that is in the Bessemer Courthouse, you probably live in the Bessemer Division."
As noted earlier, the challenged juror, Lowden, testified that he had bought his car tags at the Birmingham Division Courthouse.
[10] The challenged juror testified at the hearing:

"Q. If you had been personally asked point-blank, do you live in the Bessemer Cut-off, what would your position have been?
"A. I would have said no. Because my only knowledge would have been that it had something to do with the city of Bessemer."
[11] Because the division line passes through Hoover, this should have placed the plaintiff's experienced attorneys on notice that there might be a problem concerning whether Lowden was a resident of the Bessemer Division or of the Birmingham Division.
[12] See also, Watters v. Lawrence County, 551 So.2d 1011 (Ala.1989). In Watters, this Court was faced with a post-trial challenge of two jurors based on their residence in a county other than the county where they served as jurors. The trial court denied the motion for a new trial, and this Court affirmed. The Court held:

"Failure to timely challenge a juror for cause may result in a waiver of the right to do so if the fact of disqualification is either known or, through the exercise of due diligence, should be known. Williams v. Dan River Mills, Inc., 286 Ala. 703, 246 So.2d 431 (1971) (waiver resulted upon failure to timely challenge a juror for cause under a provision of Tit. 30, § 55, Code 1940, the predecessor of Ala.Code 1975, § 12-16-150)."
551 So.2d at 1016.
[13] This Act was adopted after the ratification of the Judicial Article, the adoption of the Alabama Rules of Civil Procedure governing selection of juries, and the adoption of the procedures used by the Administrative Office of Courts for drawing juries throughout the state.
[14] As previously noted, in a subsequent act establishing the circuit court, Bessemer Division, this section was not changed. Amended Local Acts 1935, No. 213.
[15] I also believe that Act No. 195, Ala. Acts 1953, which provided for the selection of juries from a division of the Circuit Court of Barbour County, was repealed by this general repealer clause.
[16] See Ala.Code 1975, § 12-16-55 (declaring as "the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court").
[17] "According to this rule of construction, where a statute enumerates certain things on which it is to operate, the statute is to be construed as excluding from its effect all those things not expressly mentioned." Champion v. McLean, 266 Ala. 103, 112, 95 So.2d 82, 91 (1957).