684 So.2d 132 (1996)
Ex parte TOYOTA MOTOR CORPORATION and Toyota Motor Sales, U.S.A.
(In re Carol C. PRICE, as administratrix of the Estate of Mell W. Price II, deceased v. TOYOTA MOTOR CORPORATION and Toyota Motor Sales, U.S.A., Inc.).
1951034.
Supreme Court of Alabama.
September 6, 1996.
*133 D. Alan Thomas, T. Kelly May and Frank E. Lankford, Jr. of Huie, Fernambucq & Stewart, Birmingham, for Petitioners.
Nat Bryan and Ralph Bohanan, Jr. of Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, for Respondent.
HOUSTON, Justice.
The Court of Civil Appeals reversed a judgment based upon a jury verdict for Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (hereinafter together referred to as "Toyota"), the defendants in a wrongful death case. This was done because a juror, W. P., had pleaded guilty to third degree burglary 12 ½ years before he served on the petit jury in this case. Toyota had peremptorily struck W.P.; however, W.P. was reinstated as a member of the petit jury because the plaintiff, Carol C. Price, as administratrix of the estate of Mell W. Price II, deceased, contended that Toyota had violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in striking W.P. The trial court upheld Price's challenge in the face of what Toyota contended were race-neutral reasons (that W.P. was unemployed, had owned a "lemon" automobile, was young and single, and, therefore, would more likely be somewhat negative toward Toyota and tend to render a higher verdict). The jury found for Toyota. Price sought a new trial because W. P., who Price had insisted be reinstated as a juror, had served on the jury. The trial court denied the new trial motion. Price appealed, and the Court of Civil Appeals reversed and remanded. Price v. Toyota Motor Corp., 684 So.2d 131 (Ala.1996). We granted Toyota's petition for certiorari review. Toyota raised two issues:
(1) Whether Price waived the right to challenge W. P.'s statutory disqualification through a failure to exercise due diligence to keep disqualified persons, such as W. P., off the jury panel; and
*134 (2) Whether Price waived the error by successfully challenging Toyota's peremptory strike of W.P. under Batson.

FACTS
The facts underlying this case are undisputed. Carol Price filed a wrongful death action in the Tuscaloosa County Circuit Court in 1993, based on the death of Mell W. Price II. The case came up for trial during the week of May 8, 1995. As was the custom in Tuscaloosa County, the initial qualification of the jury pool was conducted all at once by a "qualifying judge," who would not preside over the trial, prior to the beginning of the several trials scheduled for that week.[1] Price's attorneys chose not to attend the initial qualifying session. During the initial session, the qualifying judge twice asked the members of the jury pool, "Is there anyone who has been convicted of an offense involving moral turpitude?" During the qualifying session, the jury was never asked if any juror had "lost the right to vote." Ala.Code 1975, § 12-16-60(a)(4).[2]
After assembling the venire for Price's case, the trial judge conducted a second voir dire examination. Price's attorneys were present for this second voir dire. The trial judge began the voir dire himself, with a series of questions, but he asked no questions concerning criminal convictions, losing the right to vote, or any other related matters. Following this, Price's attorneys conducted a lengthy and extensive voir dire, but asked no questions concerning criminal convictions, losing the right to vote, or any other related matters.
W.P. was a member of the jury pool for this case. Once the voir dire had concluded, Toyota used a peremptory strike to remove W.P. from the jury panel. Price challenged the strike of W.P., under Batson, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), arguing that the strike was racially motivated. After considering Toyota's stated reasons for the strike, the trial judge disallowed *135 the strike and, at Price's request, seated W.P. on the jury.
On May 13, 1995, the jury returned a verdict for Toyota. After the verdict was returned, Price's attorneys investigated the members of the jury and learned that W.P. had pleaded guilty to burglary in the third degree, a Class C felony, and resisting arrest, a Class B misdemeanor. Price then moved for a new trial, arguing that she was entitled to a new trial because, she said, if W.P. had revealed his burglary conviction "[her attorneys] could have ... asked ... [follow-up] questions, including whether [W.P.'s] civil rights had been subsequently restored," to determine if W.P. was statutorily disqualified to serve on a jury, pursuant to § 12-16-60(a)(4). Toyota opposed Price's new trial motion, arguing that Price had waived her right to challenge W.P.'s qualifications to sit on the jury by failing to exercise due diligence to identify statutorily disqualified venire members during voir dire and by challenging Toyota's strike of W.P. despite Price's lack of knowledge of whether W.P. was statutorily qualified to serve on the jury. In support of its argument in opposition to Price's new trial motion, Toyota attached the affidavit of juror W.P., in which W.P. stated in part:
"I recall the question being asked whether anyone had been convicted of a crime of moral turpitude. I did not understand the question and I do not know what is meant by the term moral turpitude. I did not mean to deceive anyone by not answering this question....
"To the best of my knowledge, I believe that I have the right to vote in any election. I am not aware that my right to vote has been revoked."
After considering the arguments from both sides, the trial court denied Price's new trial motion, on the basis of the "invited error doctrine."

PROCEDURAL HISTORY
The plaintiff, Price, appealed the trial judge's denial of her new trial motion to this Court; pursuant to Ala.Code 1975, § 12-2-7, we transferred the appeal to the Court of Civil Appeals. The Court of Civil Appeals reversed the trial court's denial of Price's motion for a new trial. That court wrote:
"Our supreme court has held that a prospective juror's conviction of a crime involving moral turpitude is both a disqualification and a common law ground for a challenge for cause. Noble Trucking Co. v. Payne, 664 So.2d 202 (Ala.1995); Chrysler Credit Corp. v. McKinney, 456 So.2d 1069 (Ala.1984). Furthermore, `a new trial is mandated where a juror serves who has failed to respond to a specific question based upon a statutory disqualification.' Chrysler Credit Corp., 456 So.2d at 1071."
Price v. Toyota Motor Corp., 684 So.2d at 131. On this certiorari review, Toyota requests that we reverse the Court of Civil Appeals' holding and reinstate the judgment in its favor.

STANDARD OF REVIEW
On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals. In McBride v. Sheppard, 624 So.2d 1069, 1070-71 (Ala.1993), this Court stated the standard applicable on review of a trial court's ruling on a motion for new trial:
"[T]he ruling on a motion for new trial is within the discretion of the trial court[,] and ... the trial court's decision carries a strong presumption of correctness. Gold Kist, Inc. v. Tedder, 580 So.2d 1321, 1322 (Ala.1991). The decision of the trial court should not be disturbed on appeal unless the record plainly and palpably shows that the trial court erred and that some legal right has been abused."

I.
Judge Cates, while serving on the Court of Appeals, wrote Beasley v. State, 39 Ala.App. 182, 96 So.2d 693 (1957), Alabama's leading case in the area of disqualified jurors. In Beasley, he enunciated a three-part test for reviewing trial court rulings on new trial motions in cases where an allegedly disqualified person served on the jury:

*136 "Our enquiry on the ruling of the trial judge begins with, first, was [there] ... a ground for [the juror to be] mandatorily excused as a petit juror; second, did the [complaining litigant] exercise due diligence to keep unqualified jurors [from] being put upon him; and, third, if the first two questions are answered `yes,' then was [the disqualified person's] presence on the jury such a ground for a new trial that ... the trial judge had no discretion but to grant a new trial?"
Beasley, 39 Ala.App. at 185, 96 So.2d at 695-96.
We need not consider the first question of the Beasley test (see footnotes 1 and 2). As to the third question, our opinions in Noble Trucking Co. v. Payne, 664 So.2d 202 (Ala. 1995), and Chrysler Credit Corp. v. McKinney, 456 So.2d 1069 (Ala.1984), hold that, provided that the complaining litigant exercised due diligence to have disqualified persons removed from the jury pool (question two), a venireperson's failure to respond to a question concerning a statutory disqualification requires the grant of a new trial. The issue before this Court, then, is whether the trial judge correctly denied Price's new trial motion based upon his finding that Price had invited the error she now complains of, by failing to exercise due diligence to keep W.P., who she now alleges to be disqualified, off the jury panel.
Under Alabama law, a "[f]ailure to timely challenge a juror for cause may result in a waiver of the right to do so if the fact of disqualification is either known or, through the exercise of due diligence, should be known." Watters v. Lawrence County, 551 So.2d 1011, 1016 (Ala.1989) (citing Williams v. Dan River Mills, Inc., 286 Ala. 703, 246 So.2d 431 (1971)).[3] Relying on Noble Trucking Co. v. Payne, 664 So.2d 202 (Ala.1995), and Chrysler Credit Corp. v. McKinney, 456 So.2d 1069 (Ala.1984), the Court of Civil Appeals held that the trial judge had erred in finding that Price had failed to exercise due diligence to keep unqualified persons off the jury panel. After closely examining the holdings and underlying reasoning of Noble Trucking and Chrysler Credit, we must conclude that neither of those cases supports an order overturning the trial court's finding that Price failed to exercise due diligence. Chrysler Credit did not involve an allegation of a lack of due diligence; it dealt, instead, with the question whether literacy is a statutory qualification for jury service in Alabama. The trial judge in Noble Trucking had, in the presence of the attorney for Payne, the complaining litigant, asked the members of the jury pool whether "any of them [were] convicted felon[s] whose voting rights had not been restored." Noble Trucking, 664 So.2d at 202. We rejected Noble Trucking's argument that "Payne waived any right to complain of the disqualification" by failing to again "ask the prospective jurors whether any of them were felons whose voting rights had not been restored," id., at 203, and held that an attorney cannot reasonably be expected "to conduct [a] voir dire examination that would be a repetition of that already conducted by the court." Id. at 204. Because the judge's question had been specific and understandable, Payne's attorney could not reasonably have done anything further to assist the court in discovering the disqualifying characteristic of the juror in question.
The facts of the present case are distinguishable from those of Noble in two very important ways. First, Price was not present when the qualifying judge conducted the initial questioning of the jury. Price's attorneys had no way of knowing whether any questions had been asked of the jury pool concerning loss of the right to vote because of criminal convictions (§ 12-16-60(a)(4)) or conviction of a felony (§ 12-16-150(5)); despite this lack of knowledge, Price's attorneys *137 asked no questions about the loss of the right to vote and no questions about criminal convictions. Second, and more important, in this present case the only question asked of the jury pool concerning criminal convictions was not as complete[4] or as understandable as the question that had been asked in Noble Trucking. While the trial judge in Noble Trucking asked the veniremembers "if any of them was a convicted felon whose voting rights had not been restored," 664 So.2d at 202, the judge presiding over the initial questioning of the jury pool in this case asked: "Is there anyone who has been convicted of an offense involving moral turpitude?" Even if Price's attorneys had been present when the initial voir dire was conducted, the requirement of due diligence would not have been automatically satisfied in this case. Due diligence oftentimes requires active attorney participation in the voir dire. If Price's attorneys had been present at the initial voir dire, they, like other reasonable attorneys, would have recognized that even persons learned in the law have difficulty in ascertaining those offenses that involve moral turpitude.[5] As evidenced from W.P.'s uncontradicted affidavit, it was very foreseeable that an understandable ignorance might cause a veniremember not to respond to such a question. Price's attorneys should have requested that the judge restate the question in simpler nontechnical terms or should have simply asked the question again without the use of confusing legal terms of art. Furthermore, a positive response to the question asked ("Is there anyone who has been convicted of an offense involving moral turpitude?") would not necessarily be grounds for disqualification under § 12-16-60(a)(4). See footnotes 2 and 4, and see also Hunter v. Underwood, supra.
We recently held in General Motors Corp. v. Hopper, 681 So.2d 1373 (Ala.1996), that a party cannot wait until the entry of an adverse judgment to fulfill his or her duty to assist the trial court in determining the statutory qualifications of the members of the jury panel. In that case, we quoted with approval the following language from Pogue v. State, 429 So.2d 1159, 1161 (Ala.Crim.App. 1983):
"Since the objection could have been discovered with the exercise of due diligence at the time the jury was being qualified, it does not constitute a proper ground for a motion for a new trial. Although counsel was not required to conduct a voir dire examination which would be repetitious of that already conducted by the court, the fact remains that the ground of challenge could have been discovered before trial just as easily as it was discovered after trial."
See Hopper, 681 So.2d at 1374. We, therefore, cannot conclude from the record that the trial judge plainly and palpably erred in concluding that Price had failed to exercise due diligence in fulfilling her duty to assist the trial court during voir dire in identifying and removing disqualified persons from the jury pool.

II.
Because we find merit in Toyota's first argument, we need not decide the issue whether, by challenging Toyota's strike of W.P., Price waived the right to assert that W.P. was statutorily disqualified. We do note the obvious fundamental unfairness that would result from allowing Price, who had failed to fully participate in voir dire and therefore did not know whether W.P. was statutorily qualified to serve as a juror, to profit from her successful challenge of Toyota's strike of W.P.
REVERSED AND REMANDED.
*138 HOOPER, C.J., and SHORES, KENNEDY, and INGRAM, JJ., concur.
MADDOX, J., concurs specially.
ALMON and COOK, JJ., concur in the result.
MADDOX, Justice (concurring specially).
I concur with the opinion. I write specially only to point out an additional reason why a new trial was not merited in this case.
The Alabama Rules of Civil Procedure were adopted primarily to ensure that cases and controversies like this would be decided on their merits. In fact, Rule 1(c) of those Rules specifically states: "These rules shall be construed and administered to secure the just, speedy and inexpensive determination of every action."
Commenting on these rules, retired Circuit Judge James Haley, who worked so long and hard as a member of this Court's Advisory Committee on the Rules of Civil Procedure, said that Rule 1 was one of the most important of the civil rules and that it should be understood to apply to all of the other rules. I agree with Judge Haley.
In my opinion, the spirit of the Rules of Civil Procedure generally requires that challenges to prospective jurors on the ground that they are statutorily or otherwise disqualified should always be made pre-trial. In applying the provisions of Rule 1(c) to this case, I ask this question: Would it be "just" to allow a party who has not been diligent in determining a potential disqualification of a prospective juror to go through an entire trial and then obtain a new trial because a particular juror was statutorily disqualified? I think not.
I make one additional comment. The civil rules offer litigants sufficient time and opportunity to determine the qualifications of jurors, and I have strongly advocated the use of a questionnaire to assist a litigant in determining which jurors would be best qualified to serve in any particular case. See Ex parte Bruner, 681 So.2d 173 (Ala.1996) (Maddox, J., concurring in the result); General Motors v. Hopper, 681 So.2d 1373 (Ala.1996) (Maddox, J., concurring specially). If the plaintiffs had used a juror questionnaire in this case, they might have discovered the juror's past criminal conviction and thus prevented the problem now before us.
NOTES
[1] Ala.Code 1975, § 12-16-60(a), provides as follows for the qualifications of jurors:

"(a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
"(1) Is a citizen of the United States, has been a resident of the county for more than 12 months and is over the age of 19 years;
"(2) Is able to read, speak, understand and follow instructions given by a judge in the English language;
"(3) Is capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror;
"(4) Has not lost the right to vote by conviction for any offense involving moral turpitude."
[2] The Alabama Constitution of 1901, Art, VIII, § 182, is the only provision under Alabama law relating to losing the right to vote. In Hunter v. Underwood, 471 U.S. 222, 232-33, 105 S.Ct. 1916, 1922-23, 85 L.Ed.2d 222 (1985), the United States Supreme Court appeared to declare § 182 unconstitutional as denying the equal protection guaranteed by the 14th Amendment to the United States Constitution:

"At oral argument in this Court, the appellants' counsel suggested that, regardless of the original purpose of § 182, events occurring in the succeeding 80 years had legitimated the provision. Some of the more blatantly discriminatory selections, such as assault and battery on the wife and miscegenation, have been struck down by the courts, and appellants contend that the remaining crimesfelonies and moral turpitude misdemeanorsare acceptable bases for denying the franchise. Without deciding whether § 182 would be valid if enacted today without any impermissible motivation, we simply observe that its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect. As such, it violates equal protection under Arlington Heights [v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)]."
But, see, Ex parte Poole, 497 So.2d 537, 544 (Ala.1986), and the plurality opinion in Williams v. Lide, 628 So.2d 531, 533-34 (Ala.1993). There is no evidence that W.P. lost the right to vote. His affidavit in opposition to the new trial motion provided the only evidence in the record of his voting status:
"To the best of my knowledge, I believe that I have the right to vote in any election. I am not aware that my right to vote has been revoked."
Because Toyota does not question Price's assertion that, because of § 182, W.P. is not entitled to vote and is, therefore, disqualified from jury service pursuant to § 12-16-60(a)(4), we will assume for purposes of this appeal that W.P. was not statutorily qualified to serve on the jury in this case.
[3] See also Ala.Code 1975, § 12-16-150, which provides:

"It is good ground for challenge of a juror by either party:
". . . .
"(5) That he has been convicted of a felony."
See Holland v. Brandenberg, 627 So.2d 867, 870 (Ala.1993):
"Failure to use due diligence in testing jurors as to qualifications or grounds of challenge is an effective waiver of grounds of challenge; a [party] cannot sit back and invite error based on a juror's disqualification."
(Citations omitted.)
[4] It is the loss of the right to vote that disqualifies a person from jury service. Ala.Code 1975, § 12-16-60(a), states:

"A prospective juror is qualified to serve on a jury if the juror ...:
". . . .
"(4) Has not lost the right to vote by conviction for any offense involving moral turpitude."
[5] This Court has written: "`Moral turpitude implies something immoral in itself, regardless of... whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude.'" Pippin v. State, 197 Ala. 613, 616, 73 So. 340, 342 (1916) (quoting Fort v. Brinkley, 87 Ark. 400, 112 S.W. 1084 (1908)).