This appeal involves Jeffery Jerome Smith's conviction for theft of property in the second degree, in violation of §13A-8-4, Code of Alabama 1975, and burglary in the third degree, in violation of § 13A-7-7. Smith was sentenced to 15 years' imprisonment, pursuant to the Alabama Habitual Felony Offender Act.
 I
Smith contends that the indictment underlying his criminal conviction was moot because, he argues, the foreman of the Grand Jury lived in Houston County during the prosecution of his case, which took place in Geneva County. He bases his argument upon § 12-16-60(a)(1), Code of Alabama
1975, which requires that a juror must have been "a resident of the county for more than 12 months."
In Thomas v. State, [Ms. 90-1133, Feb. 28, 1992] ___ So.2d ___ (Ala.Cr.App. 1992), this court decided this same issue, concerning this same foreman. In Thomas, we stated:
 "[T]he trial judge did not err in concluding that Mr. Enfinger was a 'resident' of Geneva County. The facts indicating that Mr. Enfinger was a resident of Geneva County are as follows: He was born on his parents' farm in Geneva *Page 1315 
County. He later purchased that farm and either owns or has an interest in those 101 acres. His son was presently living on that farm. Mr. Enfinger was 68 years old and had lived on that farm with his first wife for 42 years. He received his mail in Geneva County. He was registered to vote in Geneva County. He did his banking, bought his groceries, and transacted most of his business in Geneva County. His motor vehicle driver's license was issued in Geneva County. He had been a lifelong resident of Geneva County and considered himself a resident of Geneva County and 'a Geneva County boy.' R. 38.
 "Mr. Enfinger's connection with Houston County was that for approximately 13 months before the return of the indictment against the appellant, he had been living in a house in Houston County. That house was owned by his second wife and was located 300 yards from the Geneva County line. Mr. Enfinger testified that if his wife died he would move back to Geneva County.
 " 'The word "residing" is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode. . . . It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. . . . It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile. . . . While residence is a necessary component of domicile, residence is not always domicile. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word "reside" may correctly denote either the technical domicile, or the actual personal residence. The word "reside" is often used to express a different meaning according to the subject matter.' "
State Farm Mutual Automobile Ins. Co. v. Hanna,277 Ala. 32, 37, 166 So.2d 872 (1964).
 " 'The fact that a person lives at a particular place creates a prima facie presumption that such place is his domicile. The presumption is rebuttable by facts to the contrary.' Nora v. Nora, 494 So.2d 16, 18 (Ala. 1986)."
Based upon Thomas, we reject Smith's argument.
 II
Smith argues that the trial court erred by giving an incorrect jury instruction on "reasonable doubt." The record indicates that the Smith failed to make a timely objection before the jury retired to deliberate. Because he did not raise this objection until he moved for a new trial, this ground is not preserved for appellate review. Turrentine v.State, 574 So.2d 1006 (Ala.Cr.App. 1990).
 III
Smith argues that the trial court erred by denying his motion for judgment of acquittal, because, he argues, the State failed to prove a prima facie case of theft of property in the second degree and burglary in the third degree.
The evidence presented by the State tended to show that the victims locked their home before they left for the day. When they returned, approximately six hours later, they discovered that the patio doors had been shattered. Upon further investigation, the victims found that five guns and four shotguns had been stolen from their home. Several of the State's witnesses testified that they saw Smith walking through a wooded area in the direction of a yellow Ford Mustang II automobile, which was later identified as Smith's vehicle, while carrying a gun in each hand. Another of the State's witnesses testified that he purchased one of the guns from Smith. He testified that Smith stated that the guns belonged to him and that he needed to sell them for financial reasons.
Although the evidence was circumstantial, it will support a conviction as stoutly as direct evidence, as long as it indicates the defendant's guilt. Bradley v. State,577 So.2d 541 (Ala.Cr.App. 1990); Dooley v. State,575 So.2d 1191 (Ala.Cr.App. 1990); Hughley v. State,574 So.2d 991 (Ala.Cr.App. 1990). In Stephens v. State,580 So.2d 11, 24 (Ala.Cr.App. 1990) this court held: *Page 1316 
 "The test of the sufficiency of circumstantial evidence is not whether the possibility exists that someone other than the accused committed the crime, but rather whether the evidence excluded every reasonable hypothesis but that of the accused's guilt. Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Viewing the State's evidence presented to the jury, which is set out above, under the principles enunciated in Cumbo, supra, we find that when viewed in the light most favorable to the prosecution, it was sufficient to allow the jury to reasonably find that the evidence excluded every reasonable hypothesis except that of appellant's guilt."
Because the record contains ample evidence that, if believed by the jury, could sustain a verdict of guilt, we must reject Smith's argument.
 IV
Smith argues that the search of his vehicle was illegal and, therefore, that the evidence seized as a result of the search should have been suppressed.
The State argues that although Smith filed a pretrial motion to suppress the evidence obtained as a result of the search, he failed to obtain an adverse ruling on the motion by the trial court. Therefore, argues the State, this argument is not preserved for review.
The trial court made the following ruling on Smith's motion to suppress:
"THE COURT: . . . What's the next motion?
 "[DEFENSE COUNSEL]: Charlie also filed, Your Honor, a motion to suppress at the trial of the case any seizure of confiscated materials from the Defendant's car which was found near the residence. . . .
". . . .
 "THE COURT: I'm going to deny your motion and we'll just see what happens when we get there."
Therefore, the trial court did make an adverse ruling and the issue was preserved for review. However, none of the evidence seized as a result of the search of the car was admitted into evidence. Thus, any error in denying the motion to suppress would have been harmless.
 V
Smith argues that the in-court identification of him by the State's witnesses was tainted by an improper photographic lineup. Smith filed a pretrial motion to suppress the photographic lineup. That motion was denied. At trial, Smith failed to object on these grounds with respect to any of the State's witnesses, however. Therefore, the State argues that Smith is not entitled to raise this issue on appeal.
In Taylor v. State, 337 So.2d 773, 775
(Ala.Cr.App.), cert. quashed, 337 So.2d 776 (1976) this court wrote:
 "We hold that once the court has ruled on a motion to suppress, supported by competent evidence as to the validity vel non of the search and seizure, it is not necessary for the defendant again at the trial to object to the evidence on constitutional grounds, and that the failure to do so does not constitute a waiver. The ruling on the motion preserves the point."
Taylor, at 774, followed the rule stated in Lawnv. United States, 355 U.S. 339, 353, 78 S.Ct. 311, 319,2 L.Ed.2d 321 (1958):
 "It is quite true generally that the overruling of a pretrial motion to suppress the use at the trial of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at the trial. . . . But the rule is one of practice and is not without exceptions, nor is it to be applied as a hard-and-fast formula to every case regardless of its special circumstances."
In Scott v. State, 599 So.2d 1222 (Ala.Cr.App. 1992), this court recently held that, in addition to a pretrial motion to suppress, an objection at trial is necessary to preserve the issue for appellate consideration. We now conclude that our holding in Scott v. State was erroneous, based upon our decision in Taylor v. State. Therefore, to the extent that the decision in Scott v. State
contradicts our holding in Taylor v. State, it is overruled. We now address the merits of the issue. *Page 1317 
In Battle v. State, 574 So.2d 943, 950 (Ala.Cr.App. 1990), this court stated:
 " 'This court has previously held that pretrial identifications are to be set aside on grounds of prejudice if the pretrial identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Scott v. State, 479 So.2d 1343, 1347
(Ala.Cr.App. 1985). It is only when the pretrial procedures used are unnecessarily or impermissibly suggestive that the totality of the circumstances surrounding the out-of-court identification need be analyzed. Coleman v. State, 487 So.2d 1380, 1388 (Ala.Cr.App. 1986).'
 "Clements v. State, 521 So.2d 1378, 1382
(Ala.Cr.App. 1988)."
Here, there is no indication in the record that the pretrial procedures used by the police were unnecessarily or impermissibly suggestive.
Moreover, the record reveals that all of the in-court identification by the State's witnesses were based upon grounds independent from the pretrial photographic lineup. Therefore, even if the pretrial lineup had been improper, any error in the admission of the in-court identifications would have been harmless. Rule 45, A.R.App.P.
AFFIRMED.
All Judges concur.