58 So.3d 829 (2008)
Larry Richard CHAVERS
v.
STATE of Alabama.
CR-06-0755.
Court of Criminal Appeals of Alabama.
April 4, 2008.
Opinion on Return to Remand August 28, 2009.
Rehearing Denied October 30, 2009.
Certiorari Denied September 17, 2010 Alabama Supreme Court 1090239.
*830 Paul M. Harden, Sr., Monroeville, for appellant.
Troy King, atty. gen., and Marc S. Bass and Tracy M. Daniel, asst. attys. gen., for appellee.
WISE, Judge.
The appellant, Larry Richard Chavers, was convicted of one count of sodomy in the first degree, a violation of § 13A-6-63, Ala.Code 1975, and one count of sexual abuse in the first degree, a violation of § 13A-6-66, Ala.Code 1975. The trial court sentenced Chavers to 21 years' imprisonment on the sodomy conviction and to 10 years' imprisonment on the sexualabuse conviction. Pursuant to the Split Sentence Act, § 15-18-8, Ala.Code 1975, the court suspended Chavers's 10-year sentence for sexual abuse and ordered him to serve 3 years in prison and the balanced on supervised probation. The court ordered that these sentences be served consecutively. The court also ordered that *831 Chavers pay $5,000 into the crime victims compensation fund, as well as court costs.
The evidence at trial tended to establish that in late May and early June 2004, I.G. and her husband took her minor grandchildren, T.G. and W.G., to their cabin in North Carolina.[1] One night during their stay, I.G. looked in the bedroom where T.G. and W.G. were sleeping and found them lying on top of each other in an inappropriate manner, wearing only their pajama tops. In response to questioning, T.G. told I.G. that Chavers had touched her in the same manner when he was dating T.G.'s mother. I.G. returned to Alabama and telephoned the Escambia County Sheriff, who came to her house and took her statement. Thereafter, the Alabama Department of Human Resources ("DHR") became involved, and an investigation ensued. I.G. was instructed to take T.G. to the Child Advocacy Center where Stephanie Jackson interviewed T.G.
At trial, T.G. recounted in detail multiple instances of abuse and/or sodomy by Chavers. T.G., who was 10 years old at the time of Chavers's trial, stated that the acts took place when she was seven years old and Chavers was dating her mother. T.G. stated that Chavers had attempted to touch her or to make her do something inappropriate 15 to 20 times and that while she was being abused or sodomized Chavers would tell her she would be grounded if she told anyone. On several occasions, T.G. attempted to tell her mother about Chavers's actions. T.G. did manage to tell her mother about one such instance; according to T.G., her mother told T.G. that she would take care of it. Another time, T.G. stated that she tried to persuade her mother to pretend that she had left the house in order to catch Chavers "in the act." T.G. also described the incident in North Carolina when her grandmother walked into the bedroom while she and W.G. were touching each other in places that they should not have been touching each other. T.G. testified that she told her grandmother Chavers had taught her that kind of touching. The jury convicted Chavers of first-degree sodomy and first-degree sexual abuse, as charged in the indictment.
Following conviction and sentencing, Chavers filed a timely motion for a new trial on December 8, 2006. A hearing was set for December 28, 2006, to consider Chavers's motion. At the December 28 hearing, the court and counsel agreed to continue the hearing until January 4, 2007. At the conclusion of the December 28 hearing, the court noted that defense counsel had subpoenaed several witnesses to testify at the hearing on the motion for a new trial and inquired if counsel planned to raise questions of residency as to any of the jurors. Defense counsel replied that he did not. The court then disclosed to the prosecutor and defense counsel it had learned that juror no. 216who had served on the jury that convicted Chaverswas not a resident of Escambia County, Alabama, at the time of Chavers's trial. The court stated that, after contacting the Judicial Inquiry Commission regarding the proper course of action regarding what it had learned, it was disclosing the matter of juror no. 216's residency to counsel. Juror no. 216 was subpoenaed to testify at the January 4 hearing. During an evidentiary hearing on Chavers's motion for a new trial, conflicting evidence was presented concerning juror no. 216's residence. The trial court made no written findings of fact regarding Chavers's claim. Instead, the trial court allowed Chavers's motion for a *832 new trial to be denied by operation of law. This appeal followed.
A critical issue presented for review is whether the trial court erred when it denied Chavers's motion for a new trial, which asserted as a ground that one of the jurors in his case was not a resident of Escambia County, Alabama, at the time of his trial. Because Chavers's motion for a new trial was denied by operation of law, the presumptions that normally apply to a trial judge's denial of a motion for new trial do not apply. See Edgar v. State, 646 So.2d 683 (Ala.1994).
Chavers argues that juror no. 216 was not a resident of Escambia County at the time of the trial and that he was therefore not qualified to sit on a jury in Escambia County. Chavers further argues that although the Alabama judicial system jury roles indicated that juror no. 216 had an Escambia County, Alabama, post office box and an address of South Eighth Avenue in Atmore, which is located in Escambia County, Alabama, he did not actually reside at that address. Instead, Chavers argues, juror no. 216 actually resided at 7500 Hodges Road, just across the state line in Escambia County, Florida.[2] Thus, Chavers argues, a new trial is required in this case.
During the January 4 hearing on Chavers's posttrial motions, juror no. 216 was subpoenaed to testify. Juror no. 216 testified that he lived at 105-1/2 Tatum Avenue in Atmore, Alabama, that he maintained a post office box in Atmore, and that he had lived there all of his life.[3] However, juror no. 216 testified, he did not own property in Alabama. Rather, he testified, he and his wife owned property in Florida, just across the state line in Escambia County, Florida. Juror no. 216 testified that his wife and children lived on the Florida property and that the address of that property was 7500 Hodges Road. Juror no. 216 denied that he resided with his wife and children at the Florida address; he also denied that he and his wife were separated. Instead, he maintained that "I stay there a little bit," but admitted that he spent three to four nights a week there and that he had spent all the previous week at the residence in Florida. (R. 735.) Juror no. 216 testified that he had been employed by Reid State Technical College in Evergreen for the past 15 years and that his job required him to have an Alabama driver's license. When asked when he stopped residing in the State of Florida, juror no. 216 responded, "I guess I still do." (R. 736.) Ultimately, juror no. 216 maintained that he resided both in Alabama at the Tatum Avenue address and in Florida at the Hodges Road address. When defense counsel attempted to determine how often juror no. 216 stayed with his wife and children in Florida and for how long, juror no. 216 responded that that was "between me and my wife how many times I stay there." (R. 739.) Juror no. 216's wife was equally unwilling to disclose her husband's residence, maintaining that it was not anyone's business "how many nights my husband stays at my house or if he stays at his sister's house." (R. 754.) However, she did admit that her husband's job required him to be an Alabama resident. Juror no. 216's sister was also subpoenaed to testify. She testified that she lived at 105 Tatum Avenue in Atmore, Alabamaapproximately two to three miles from the Florida state line. *833 She testified that she owned two houses in Atmore. She further testified that the addresses of the houses were 105 Tatum Avenue and 105-1/2 Tatum Avenue, and that the houses were approximately 50-60 feet apart. Juror no. 216's sister testified that on occasion her brother stayed at the house located at 105-1/2 Tatum Avenue, but she was unable to say how often he stayed there. Further questioning determined that the utility bills for 105-1/2 Tatum Avenue were in her name and that her brother did not compensate her financially for staying at that address.
"Alabama Code 1975, § 12-16-60(a)(1), requires that for more than 12 months before the start of the trial a prospective juror be a resident of the county in which the juror is being asked to serve. In order to serve as a juror in a trial pending in [Escambia County], a prospective juror must have resided in [Escambia County] for more than 12 months before the start of the trial. See General Motors Corp. v. Hopper, 681 So.2d 1373 (Ala.1996). The requirements of § 12-16-60 are mandatory; the juror qualifications are not within the trial court's discretion. McBride v. Sheppard, 624 So.2d 1069, 1071 (Ala. 1993).
"In McBride, the appellants argued that the trial court had erred in denying their motion for a new trial in which they argued that a juror was not qualified to sit on the jury under § 12-16-60(a)(2), Ala.Code 1975 (requiring a juror to be able to read instructions given by the judge). This Court noted that it had held in Chrysler Credit Corp. v. McKinney, 456 So.2d 1069 (Ala.1984), `that a new trial was required where the prospective jury venire was specifically asked whether each member could read and write the English language and each member indicated by silence that he or she could.' 624 So.2d at 1072. However, in McBride this Court noted that the record did not indicate that the prospective juror was specifically asked whether he could read or write the English language; instead, the juror had indicated by his silence that he could. Because the record did not indicate that counsel for the McBrides had specifically questioned the prospective juror about his ability to read the English language and the record also did not indicate that counsel was concerned about the educational background of the prospective jurors, this Court affirmed the trial court's order denying the motion for a new trial. 624 So.2d at 1072. See also Holland v. Brandenberg, 627 So.2d 867, 870 (Ala.1993)('Failure to use due diligence in testing jurors as to qualifications or grounds of challenge is an effective waiver of grounds of challenge; a defendant cannot sit back and invite error based on juror disqualification.').
"In Noble Trucking [Co. v. Payne, 664 So.2d 202 (Ala.1995)], cited by Keibler-Thompson as support for its argument that a new trial is warranted here, the appellant, Payne, learned that a juror's voting rights had not been restored and that the juror was therefore disqualified under § 12-16-60, Ala.Code 1975. 664 So.2d at 202. Noble Trucking argued that Payne's attorney did not ask the prospective jurors whether any of them had committed a felony and, if so, whether their voting rights had been restored; thus, it argued, Payne had waived any right to complain on the basis of a juror's disqualification. This Court upheld the trial court's order granting a new trial and, in doing so, distinguished Holland and McBride. 664 So.2d at 203-04. In Noble Trucking, we stated that `[i]n Holland and McBride the trial court did not conduct open voir dire in the presence of the *834 defendant's attorney, and the attorneys failed to conduct their own voir dire to ask the jurors about their qualifications.' 664 So.2d at 204. However, we noted, in Noble Trucking, `the trial court specifically asked the prospective jurors, in the presence of Payne's counsel, whether any of them were convicted felons whose voting rights had not been restored, and Holland remained silent.' 664 So.2d at 204. We concluded that Payne and her attorney had a right to rely on the juror's response to the trial court's question regarding his qualifications as a juror. Id. Moreover, we noted that due diligence regarding a juror's qualifications does not require counsel to conduct voir dire examination that would be repetitious of the voir dire examination already conducted by the court. Id. See also Lollar v. State, 422 So.2d 809 (Ala. Crim.App.1982); Slay v. State, 338 So.2d 3 (Ala.Crim.App.1976).3
"Steading, citing Parish v. State, 480 So.2d 29, 31 (Ala.Crim.App.1985), and Huckabaa v. State, 475 So.2d 891 (Ala. Crim.App.1985), argues that in order to establish the need for a new trial based on a prospective juror's failure to respond properly to a question regarding his or her qualifications, Keibler-Thompson must establish that its rights were probably prejudiced by the juror's failure to respond to the question. However, Steading's argument is misplaced, because Parish and Huckabaa do not address juror qualifications enumerated in § 12-16-60, Ala.Code 1975. Parish dealt with a juror's failure to disclose her possible acquaintance with defense counsel, and Huckabaa dealt with challenges of jurors for cause under § 12-16-150, Ala.Code 1975. See Chrysler Credit Corp. v. McKinney, 456 So.2d 1069, 1071 (Ala.1984). Juror no. 138 was disqualified because she did not meet the mandatory requirements of § 12-16-60(a)(1), and Keibler-Thompson was misled by juror no. 138's failure to respond to the question regarding residency.
"3In Beasley v. State, the Court of Appeals recognized that the appellant's counsel and the court were misled by the juror's failure to respond. 39 Ala.App. 182, 96 So.2d 693 (1957). The court stated, `As to due diligence, we consider that a defendant is not required to search the records of all the courts of this State and of its municipalities running back to the time when the oldest venireman became 14 years of age.' 39 Ala. App. at 189, 96 So.2d at 700."
Keibler-Thompson Corp. v. Steading, 907 So.2d 435, 441-43 (Ala.2005).
The evidence presented at the hearing on the motion for a new trial was, at best, inconsistent and conflicting, and the motion was denied by operation of law, without an affirmative statement by the trial court. Addressing a similar situation, the Alabama Supreme Court held:
"We hold that where, as here, a criminal defendant's motion for a new trial is denied under the provisions of Rule 24.4, Ala.R.Crim.P., without an affirmative statement by the trial judge giving the ruling a presumption of correctness and the defendant supports his new trial motion by evidence that was not presented at trial, and that evidence, if not controverted by the State, will entitle him to a new trial, the denial by operation of law should be reversed and the case remanded for the trial court to conduct a hearing on his motion for new trial and then enter an order either granting or denying the motion."
Edgar v. State, 646 So.2d 683, 687 (Ala. 1994); see also Benjamin v. State, 889 So.2d 610, 612 (Ala.Crim.App.2003); McDade v. State, 864 So.2d 377, 378 (Ala. Crim.App.2002).
Given these circumstances, we conclude that the best course of action is to *835 remand this case for the trial court to issue specific written findings of fact regarding Chavers's claim, because the trial court is in the best position to reconcile the inconsistent and conflicting testimony and to make credibility choices. See, e.g., Thomas v. State, 43 So.2d 1288 (Ala.Crim.App. 2007); Vinnie v. State, 866 So.2d 1175 (Ala.Crim.App.2002).
Based on Edgar, we remand this case for the trial court to make specific, written findings of fact as to each claim Chavers raised in his motion for a new trial, as well as any additional claims that were raised and upon which evidence was presented during the hearing on Chavers's motion for a new trial. If the trial court determines that Chavers is entitled to relief on his claims, then the court may grant such relief as it deems appropriate.
The trial court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 56 days of the release of this opinion. The return to remand shall include the trial court's specific written findings of fact and any other materials generated in response to this Court's directions.[4] Because it is necessary to remand this case, we pretermit discussion of Chavers's remaining claims.
REMANDED WITH DIRECTIONS.
BASCHAB, P.J., and McMILLAN, SHAW, and WELCH, JJ., concur.

On Return to Remand
WISE, Presiding Judge.
The appellant, Larry Richard Chavers, was convicted of first-degree sodomy, a violation of § 13A-6-63, Ala.Code 1975, and first-degree sexual abuse, a violation of § 13A-6-66, Ala.Code 1975. The trial court sentenced him to serve consecutive terms of twenty-one years in prison on the sodomy conviction and ten years in prison on the sexual abuse conviction. It then split the sentence on the sexual abuse conviction and ordered him to serve three years followed by seven years on supervised probation. Chavers filed a motion for a new trial, which was denied by operation of law after the trial court conducted an evidentiary hearing.
On April 4, 2008, we remanded this case to the trial court with instructions that it make specific, written findings of fact as to the claims Chavers raised in his motion for a new trial. See Chavers v. State, [Ms. CR-06-0755, April 4, 2008] 58 So.3d 829 (Ala.Crim.App.2008). The trial court complied with our instructions and submitted an order on return to remand.
Chavers argues that he is entitled to a new trial because juror no. 216 was not a resident of Escambia County at the time of the trial and therefore was not qualified to sit on a jury in Escambia County. In our previous opinion, we summarized the testimony during the hearing on the motion as follows:
"During the January 4 hearing on Chavers's posttrial motions, juror no. 216 was subpoenaed to testify. Juror no. 216 testified that he lived at 105-1/2 Tatum Avenue in Atmore, Alabama, that he maintained a post office box in Atmore, and that he had lived there all of his life.3 However, juror no. 216 testified, *836 he did not own property in Alabama. Rather, he testified, he and his wife owned property in Florida, just across the state line in Escambia County, Florida. Juror no. 216 testified that his wife and children lived on the Florida property and that the address of that property was 7500 Hodges Road. Juror no. 216 denied that he resided with his wife and children at the Florida address; he also denied that he and his wife were separated. Instead, he maintained that `I stay there a little bit,' but admitted that he spent three to four nights a week there and that he had spent all the previous week at the residence in Florida. (R. 735.) Juror no. 216 testified that he had been employed by Reid State Technical College in Evergreen for the past 15 years and that his job required him to have an Alabama driver's license. When asked when he stopped residing in the State of Florida, juror no. 216 responded, `I guess I still do.' (R. 736.) Ultimately, juror no. 216 maintained that he resided both in Alabama at the Tatum Avenue address and in Florida at the Hodges Road address. When defense counsel attempted to determine how often juror no. 216 stayed with his wife and children in Florida and for how long, juror no. 216 responded that that was `between me and my wife how many times I stay there.' (R. 739.) Juror no. 216's wife was equally unwilling to disclose her husband's residence, maintaining that it was not anyone's business `how many nights my husband stays at my house or if he stays at his sister's house.' (R. 754.) However, she did admit that her husband's job required him to be an Alabama resident. Juror no. 216's sister was also subpoenaed to testify. She testified that she lived at 105 Tatum Avenue in Atmore, Alabamaapproximately two to three miles from the Florida state line. She testified that she owned two houses in Atmore. She further testified that the addresses of the houses were 105 Tatum Avenue and 105-1/2 Tatum Avenue, and that the houses were approximately 50-60 feet apart. Juror no. 216's sister testified that on occasion her brother stayed at the house located at 105-1/2 Tatum Avenue, but she was unable to say how often he stayed there. Further questioning determined that the utility bills for 105-1/2 Tatum Avenue were in her name and that her brother did not compensate her financially for staying at that address.
"3Juror no. 216 was not asked about, and he offered no explanation for, the discrepancy between the South Eighth Avenue address listed on the master jury roll and the Tatum Avenue address he testified to during the hearing on the motion for a new trial."
Chavers, 58 So.3d at 832. We also note that juror no. 216 admitted that the judge who qualified the veniremembers asked if they were residents of Escambia County, Alabama, and if they had been for more than twelve months, and he testified that he did not respond to the question because he lived at 105-1/2 Tatum Avenue in Alabama.
In its order on remand, the trial court found as follows:
"During the hearing of the motion for new trial, the first three witnesses called by the Defendant were Juror No. 216 (whose residency is at issue), his wife, and his sister. . . .
". . . .
"This Court will now address the testimony of the first three witnesses called by the Defendant. Their testimony concerns the residency issue, insofar as *837 such issue might pertain to juror 216
". . . .
"As stated by the Alabama Court of Criminal Appeals, in its aforesaid opinion, `Alabama Code 1975, Section 12-16-60(a)(1), requires that for more than 12 months before the start of the trial a prospective juror be a resident of the county in which the juror is being asked to serve. In order to serve as a juror in a trial pending in (Escambia County), a prospective juror must have resided in Escambia County for more than 12 months before the start of the trial. See General Motors Corp. v. Hopper, 681 So.2d 1373 (Ala.1996). The requirements of Section 12-16-60 are mandatory; the juror qualifications are not within the trial court's discretion. McBride v. Sheppard, 624 So.2d 1069, 1071 (Ala. 1993).'
"Therefore, the question or issue to be decided, based on the testimony of said three witnesses, is whether [juror no. 216] was a `resident,' as that word is used in Section 12-16-60.
"As pointed out in the said opinion of the Alabama Court of Criminal Appeals, the evidence was, at best, inconsistent and conflicting.
"Citing 77 C.J.S. Resident p. 305 (1952), the Supreme Court of Alabama has stated the following:
"`The word "resident" is in common usage, and many definitions of it are to be found in the decisions. It is, nevertheless, difficult to give an exact, or even a satisfactory, definition, for the term is flexible, elastic, slippery and somewhat ambiguous.
"`"Resident" has no technical meaning, and no fixed meaning applicable to all cases, but rather it has many meanings, and is used in different and various senses, and it has received various interpretations by the courts. Generally the construction or signification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case.'
"[Mathis v. Employers' Fire Ins. Co., 399 So.2d 273, 275 (Ala.1981).] C.J.S. goes on to say, at page 306, that `it has been stated that living in a particular locality is sufficient for becoming a resident of it, and that the term "resident" may be used in the strict, primary sense of one actually living in a place for a time, irrespective of domicile, and that it may refer to a temporary sojourner, as well as to one possessing a legal domicile.'
"In Tyson v. State, 784 So.2d 328 (Ala. Crim.App.2000), the Alabama Court of Criminal Appeals stated the following: `The Alabama Supreme Court has stated that for purposes of Section 12-16-60 less proof is required to prove residence than is required for purposes of proving domicile. See City of Orange Beach v. Perdido Pass Developers, Inc., 631 So.2d 850 (Ala.1993) (court held that county where driver's license was issued and county where mail was received proved county of residence for purposes of Section 12-16-60).'
"One may have a legal domicile with his family, and reside actually and personally away from his family. State Farm Mutual Automobile Insurance Company v. Phillip Hanna et al, 277 Ala. 32,166 So.2d 872[ (1964) ].
"A man can have but one domicile, at one and the same time, though he may have numerous places of residence. Ex *838 parte Bullen, 236 Ala. 56, 181 So. 498[ (1938) ].
"Intent accompanied by acts and not lapse of time determines whether a person is a `resident' of a particular place, as the word means more than a mere physical presence. Routt v. Barrett, 71 N.E.2d 660, 671, 396 111. 322. Of course, it is obvious that one cannot look into a person's mind and determine his or her intent. It can only be based on a person's actions and statements or testimony, and any facts which might rebut or support the same.
"What was [juror no. 216's] intent concerning his residency? This Court is unable to answer that question with certainty. However, [juror no. 216] did twice testify, under oath, that he was a resident of Escambia County, Alabama at the time of trial and for more than 12 months prior thereto, i.e., by his silence when the question of residency was propounded by the Court during its qualifying of the jury, and by his testimony during the hearing of Defendant's motion for new trial. Also, [juror no. 216's] wife testified that he lived at `105 and a half Tatum Avenue,' and his sister testified, in effect, that he stayed at a house owned by her, on occasion, and she Svould guess maybe a few times a week.' Other testimony established that said house was located in Escambia County, Alabama.
"Furthermore, this Court finds that the following facts existed at the time of the trial of this case: [Juror no. 216] had been employed at Reid State Technical College, in Alabama, for fifteen years, and his employment required that he have an Alabama driver's license, and he had such for twenty-five years. He had paid income taxes to the State of Alabama for thirty years. He received his mail, driver's license and jury summons in Escambia County, Alabama. All four of his motor vehicles were registered in Escambia County, Alabama, and he had a checking account at United Bank in Atmore, Escambia County, Alabama.
"This Court is uncertain as to the quantum of proof required to meet and satisfy the residency requirement of Section 12-16-60(a)(1). However, as well as this Court can determine, qualification of a juror is a matter within the discretion of the trial court, Hamilton v. State, 680 So.2d 987, 996 (Ala.Crim.App. 1996), and the court must be reasonably satisfied as to a juror's qualifications, Collins v. State, 385 So.2d 993, 1000 (Ala.Crim.App.1979).
"This Court is not reasonably satisfied that, at the time of trial, [juror no. 216] was domiciled in Escambia County, Alabama. Therefore, this Court finds that he was not so domiciled. Because of the aforesaid inconsistent and conflicting evidence and, in the opinion of this Court, sometimes evasive testimony, this Court has doubts and reservations concerning the status of [juror no. 216's] residency. Nevertheless, based on the testimony of [juror no. 216], his wife, and his sister, the Court is reasonably satisfied that, at the time of trial and for more than 12 months prior thereto, [juror no. 216] had been a temporary resident of Escambia County, Alabama on a part-time and somewhat intermittent and sporadic basis. Therefore, this Court finds such to be fact."
(S.C.R. 24-36.)
With respect to qualifications to serve on a jury, § 12-16-60(a), Ala.Code 1975, provides, in pertinent part:
"A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, *839 good character and sound judgment and also:
"(1) Is a citizen of the United States, has been a resident of the county for more than 12 months and is over the age of 19 years . . . ."
In Keibler-Thompson Corp. v. Steading, 907 So.2d 435, 440-43 (Ala.2005), the Alabama Supreme Court addressed a similar situation as follows:
"Keibler-Thompson argues that juror no. 138 was not a resident of the area known as the Bessemer Cutoff in Jefferson County at the time of the trial and that she was therefore not qualified to sit on a jury in the Bessemer Division of Jefferson County. Keibler-Thompson alleges that, during voir dire, the trial court asked the jury pool, `Is there anyone here who is not a citizen of the United States or a resident citizen of the Bessemer Cut-off in Jefferson County for more than 12 months?' Keibler-Thompson alleges that, although the Alabama judicial system jury [rolls] indicated that juror no. 138 resided at 2644 Novel Drive, Bessemer, Al 35023, she did not reside at that address; her correct address is 185 Marina Road, Adger, Alabama. Adger is in Jefferson County; however, juror no. 138's house is located in Walker County. Keibler-Thompson argues that juror no. 138 failed to respond to the trial court's specific question asking whether anyone was not a citizen of the Bessemer Cutoff and that Keibler-Thompson's counsel had relied on her failure to respond. Thus, Keibler-Thompson argues, a new trial is mandated in this case. See Noble Trucking Co. v. Payne, 664 So.2d 202 (Ala.1995) (holding that a new trial is mandated where a juror fails to respond to a specific question based upon a statutory qualification).
"After the trial, Keibler-Thompson moved for a new trial and alleged that after the trial had ended it learned that juror no. 138 did not reside in the Bessemer Cutoff area.2 In response, Steading submitted an affidavit from juror no. 138. That affidavit stated, in pertinent part:
"`I currently reside at 185 Marina Road, Adger, Alabama, 35006. The City of Adger is located in Jefferson County, Alabama. My mailing address is a Jefferson County/Bessemer Division mailing address. My actual house, however, is physically located in Walker County. I live on the Jefferson/Walker county line. I have lived at this mailing address for approximately 14 years.
"`Since I have lived at this address, including the Steading case, I have served on two separate juries in Jefferson County/Bessemer Division. The first trial was about 5 years before the Steading trial. When I reported to jury duty on the Monday of the Steading trial, I brought my juror card with me and turned it in to the court officials. I wrote my proper address on the card.
"`During juror organization and qualification by the Court officials, the question was asked about whether or not jurors who lived on the county line were properly qualified. The Court officials stated that jurors were selected from driver's license rolls and qualification was based upon your address as it is listed on your driver's license. My address on my driver's license is my mailing address and is a Jefferson County address. Based upon this answer given by the court official, I believed that I was properly qualified for jury service. The Steading trial is now the second time that I had been qualified in this manner for jury service *840 in Jefferson County/Bessemer Division.'
"Alabama Code 1975, § 12-16-60(a)(1), requires that for more than 12 months, before the start of the trial a prospective juror be a resident of the county in which the juror is being asked to serve. In order to serve as a juror in a trial pending in the Bessemer Cutoff area of Jefferson County, a prospective juror must have resided in the Bessemer Cutoff area of Jefferson County for more than 12 months before the start of the trial. See General Motors Corp. v. Hopper, 681 So.2d 1373 (Ala.1996). The requirements of § 12-16-60 are mandatory; the juror qualifications are not within the trial court's discretion. McBride v. Sheppard, 624 So.2d 1069, 1071 (Ala.1993).
"In McBride, the appellants argued that the trial court had erred in denying their motion for a new trial in which they argued that a juror was not qualified to sit on the jury under § 12-16-60(a)(2), Ala.Code 1975 (requiring a juror to be able to read instructions given by the judge). This Court noted that it had held in Chrysler Credit Corp. v. McKinney, 456 So.2d 1069 (Ala.1984), `that a new trial was required where the prospective jury venire was specifically asked whether each member could read and write the English language and each member indicated by silence that he or she could.' 624 So.2d at 1072. However, in McBride this Court noted that the record did not indicate that the prospective juror was specifically asked whether he could read or write the English language; instead, the juror had indicated by his silence that he could. Because the record did not indicate that counsel for the McBrides had specifically questioned the prospective juror about his ability to read the English language and the record also did not indicate that counsel was concerned about the educational background of the prospective jurors, this Court affirmed the trial court's order denying the motion for a new trial. 624 So.2d at 1072. See also Holland v. Brandenberg, 627 So.2d 867, 870 (Ala.1993)('Failure to use due diligence in testing jurors as to qualifications or grounds of challenge is an effective waiver of grounds of challenge; a defendant cannot sit back and invite error based on juror disqualification.').
"In Noble Trucking, cited by Keibler-Thompson as support for its argument that a new trial is warranted here, the appellant, Payne, learned that a juror's voting rights had not been restored and that the juror was therefore disqualified under § 12-16-60, Ala.Code 1975. 664 So.2d at 202. Noble Trucking argued that Payne's attorney did not ask the prospective jurors whether any of them had committed a felony and, if so, whether their voting rights had been restored; thus, it argued, Payne had waived any right to complain on the basis of a juror's disqualification. This Court upheld the trial court's order granting a new trial and, in doing so, distinguished Holland and McBride. 664 So.2d at 203-04. In Noble Trucking, we stated that `[i]n Holland and McBride the trial court did not conduct open voir dire in the presence of the defendant's attorney, and the attorneys failed to conduct their own voir dire to ask the jurors about their qualifications.' 664 So.2d at 204. However, we noted, in Noble Trucking, `the trial court specifically asked the prospective jurors, in the presence of Payne's counsel, whether any of them were convicted felons whose voting rights had not been restored, and Holland remained silent.' 664 So.2d at 204. We concluded that Payne and her attorney had a right to rely on the juror's *841 response to the trial court's question regarding his qualifications as a juror. Id. Moreover, we noted that due diligence regarding a juror's qualifications does not require counsel to conduct voir dire examination that would be repetitious of the voir dire examination already conducted by the court. Id. See also Lollar v. State, 422 So.2d 809 (Ala. Crim.App.1982); Slay v. State, 338 So.2d 3 (Ala.Crim.App.1976).3
"Steading, citing Parish v. State, 480 So.2d 29, 31 (Ala.Crim.App.1985), and Huckabaa v. State, 475 So.2d 891 (Ala. Crim.App.1985), argues that in order to establish the need for a new trial based on a prospective juror's failure to respond properly to a question regarding his or her qualifications, Keibler-Thompson must establish that its rights were probably prejudiced by the juror's failure to respond to the question. However, Steading's argument is misplaced, because Parish and Huckabaa do not address juror qualifications enumerated in § 12-16-60, Ala.Code 1975. Parish dealt with a juror's failure to disclose her possible acquaintance with defense counsel, and Huckabaa dealt with challenges of jurors for cause under § 12-16-150, Ala.Code 1975. See Chrysler Credit Corp. v. McKinney, 456 So.2d 1069, 1071 (Ala.1984). Juror no. 138 was disqualified because she did not meet the mandatory requirements of § 12-16-60(a)(1), and Keibler-Thompson was misled by juror no. 138's failure to respond to the question regarding residency.
"Steading also argues that before trial juror no. 138 discussed her residency with court officials and that she reasonably believed that she was properly qualified to serve on the jury. However, the fact that juror no. 138 thought she was qualified to serve on the jury does not satisfy the requirement of § 12-16-60(a)(1) that she have resided in the Bessemer Cutoff Area of Jefferson County for 12 months preceding the trial. Indeed, juror no. 138 stated in her affidavit that she resided in Walker County. The trial court did not have discretion to determine that, because juror no. 138 believed she was qualified to serve on the jury, she was so qualified. See McBride, 624 So.2d at 1071. Thus, the trial court erred in denying Keibler-Thompson's motion for a new trial on the basis that one of the jurors in the case was not qualified to sit on the jury.
"__________
"2Steading does not argue that Keibler-Thompson did not act with due diligence in discovering juror no. 138's alleged disqualification.
"3In Beasley v. State, the Court of Appeals recognized that the appellant's counsel and the court were misled by the juror's failure to respond. 39 Ala. App. 182, 96 So.2d 693 (1957). The court stated, 'As to due diligence, we consider that a defendant is not required to search the records of all the courts of this State and of its municipalities running back to the time when the oldest venireman became 14 years of age.' 39 Ala.App. at 189, 96 So.2d at 700."
Also, in Chrysler Credit Corp. v. McKinney, 456 So.2d 1069, 1071 (Ala.1984), the Alabama Supreme Court stated:
"We have held that the statutory prerequisite to jury service requiring the absence of any conviction of an offense involving moral turpitude is an absolute, and that such a conviction is an automatic disqualification from jury service where the juror was asked that question and failed to respond. In Beasley v. State, 39 Ala.App. 182, 96 So.2d 693 (1957), we held that the failure of a prospective juror to answer truthfully *842 when asked the question concerning the conviction of a crime required a new trial. In Beasley, the prospective juror had been previously convicted of adultery. He was silent when the question concerning the conviction of a crime was asked by the trial judge, and he served on the jury. This Court held that this prior conviction was both a disqualification and a common law ground for challenge for cause. Thus, the trial court's denial of the motion for new trial based on such a disqualification was error.
"We need not decide under the facts in this case whether a new trial must automatically be granted when it is shown after judgment that a juror served who was disqualified under the statute. We do, however, hold that a new trial is mandated where a juror serves who has failed to respond to a specific question based upon a statutory disqualification."
The first question before this court is whether juror no. 216 was disqualified because he was not a resident of Alabama as required by § 12-16-60(a)(1), Ala.Code 1975. In this case, the testimony concerning juror no. 216's residence was "inconsistent and conflicting ... and, in the opinion of [the trial court], sometimes evasive." (S.C.R. 36.) Although he admitted at one point that he resided in Florida, juror no. 216 also asserted that he lived in Alabama during the time of the trial and for at least twelve months before the trial. He also admitted that he had been employed at Reid State Technical College in Alabama for fifteen years and that his employment required that he have an Alabama driver's license. There was testimony that juror no. 216 had paid income taxes to the State of Alabama for thirty years; that he received his mail, driver's license, and jury summons in Escambia County, Alabama; that all four of his motor vehicles were registered in Escambia County, Alabama; and that he had a checking account at United Bank in Atmore, Escambia County, Alabama. However, after reading the testimony of juror no. 216, his wife, and his sister, it is clear that juror no. 216 actually resided in the State of Florida rather than in the State of Alabama and that these acts were simply the minimum necessary to maintain the facade that he lived in Alabama so he could keep his job. Thus, we conclude that the trial court properly concluded that juror no. 216 did not reside in Alabama on a full-time basis.
We further note that § 12-16-60(a)(1), Ala.Code 1975, does not reference temporary or part-time residents, and we do not believe it intended to include such residents in its purview. In fact, as early as 1861, the Alabama Supreme Court found that such "residents" did not satisfy the residency requirement to serve as jurors. Specifically, in Aaron v. The State, 37 Ala. 106, 113-14 (1861), the court held:
"The jurors Drish and Choate were mere tenants and occupants, by yearly letting, of rooms used as sleeping apartments. The section of the Code which defines the qualifications of jurors, declares that it is a good ground of challenge for either party, `that the juror has not been a resident householder or freeholder of the county, for one year preceding the time he is sworn.' § 3583. The term `householder' is defined by Mr. Webster to mean, `the master or chief of a family; one who keeps house with his family.' `Household: those who dwell under the same roof, and compose a family.' In the case of Bourne v. Witt, (19 Wend. 475,) Bronson, J., said, `The word "householder," in this statute, means the head, master, or person who has the charge of, and provides for a family.' `A person having and *843 providing for a household, is a householder.'Griffin v. Sutherland, 14 Barb. See, also, Rex v. Inhabitants of Rufford, 8. Mod. 40; Shade's bail, 1 Chitty, 502; Rex v. Founder, 1 B. & Cress. 178; 3 Petersdorff's Abr. 103. Householder, in our statute, means something more than the mere occupant of a room or house. It implies in its term the idea of a domestic establishmentof the management of a household.Sallee v. Waters, 17 Ala. 482[(1850)]; Boykin v. Edwards, 21 Ala. 261[(1852)]; [Parmalee's Case] 2 Mart. La. 313; Burrill's Law Dictionary, `Household.' Under this rule, Messrs. Drish and Choate were not competent jurors; and for the error in putting them upon the prisoner, this case must be reversed."
See also § 12-16-150(2), Ala.Code 1975 (providing that "[i]t is a good ground for challenge of a juror by either party ... [t]hat the person has not been a resident householder or freeholder of the county for the last preceding six months."); Williams v. State, 51 Ala.App. 1, 282 So.2d 349 (Ala.Crim.App.1973) (holding that the requirement of Title 30, § 55(1), Ala.Code 1940, that a juror must have been a resident householder or freeholder for the preceding year was constitutional); Anderson v. State, 40 Ala.App. 509, 517, 120 So.2d 397, 403 (1960) (noting that "[t]he statutory grounds of challenge which should keep a man's name from the roll are (Code 1940, T. 30, § 55, as amended): '... That the person has not been a resident householder or freeholder of the county for the last preceding year.... That he is not a citizen of Alabama.'"); Maund v. State, 254 Ala. 452, 458, 48 So.2d 553, 558 (1950) (noting that "[b]oth prospective jurors were shown not to have been resident householders or freeholders of Coffee County for the last preceding year. They were therefore subject to challenge for cause. Section 55, Title 30, Code."); Johnson v. State, 26 Ala.App. 476, 479, 162 So. 553, 556 (1935) (noting that "[a]ny person who has not been a resident householder or freeholder of a county for a period of one year, next preceding, is not entitled to have his name enrolled as a legal juror of that county. Code Ala.1923, § 8610."); Williams v. State, 109 Ala. 64, 64 n. 1, 19 So. 530, 530 n. 1 (Ala. 1896) (noting that "Cr.Code 1886, § 4331, makes it a ground of challenge that a juror has not been a resident householder or freeholder in the county the preceding year"); Katzenberg v. Lehman, 80 Ala. 512, 514, 2 So. 272, 273 (1887) (noting that "[t]he word `householder,' as used in the statute defining the qualifications of jurors, has received an adjudged meaningthe occupier of a house, being the head or master, and having and providing for a household. `It implies in its term the idea of a domestic establishmentof the management of a household.' Aaron v. The State, 37 Ala. 106[(1861)]."); Dunlap v. State, 76 Ala. 460, 462-63 (Ala. 1884) (noting that, "[a]s early as 1841, it became manifest to the legislature of this State that sufficient care and watchful prudence were not bestowed, in the matter of selecting and drawing juries. It was then enacted that jurors, grand and petit, should be a chosen bodya class selected for their honesty, impartiality and intelligence; men esteemed in the community for their integrity, fair character, and sound judgment. And certain named officers were to make the selection from all the resident freeholders and householders in the county, within certain specified ages. Such has been our statutory law ever since; and the statutes are, or should be, the clearest exponents of the State's policy, upon any subject upon which their voice is heard." (emphasis added)). Therefore, we do not find any support for the trial court's finding that juror no. 216 satisfied the requirements of § 12-16-60(a)(1), *844 Ala.Code 1975, because he allegedly resided in Alabama "on a part-time and somewhat intermittent and sporadic basis." (S.C.R.36.)
For these reasons, we conclude that juror no. 216 was not a resident of the State of Alabama as required by § 12-16-60(a)(1), Ala.Code 1975.
The second question before us is whether juror no. 216 failed to respond to a specific question about his statutory disqualification. During the hearing on the motion for a new trial, juror no. 216 conceded that the judge who qualified the veniremembers had asked about his residence and that he had not responded because he believed he lived in Alabama. Based on juror no. 216's answers to questions during the hearing on the motion for a new trial, it is clear that any additional questioning by defense counsel would have yielded the same result. Thus, this is not a case in which counsel knew or should have known about the disqualification during the jury selection proceedings and did not object. See General Motors Corp. v. Hopper, 681 So.2d 1373 (Ala.1996); Holland v. Brandenberg, 627 So.2d 867 (Ala. 1993); Watters v. Lawrence County, 551 So.2d 1011 (Ala.1989); McCollum v. State, 678 So.2d 1210 (Ala.Crim.App.1995); Bradley v. State, 577 So.2d 541 (Ala.Crim. App.1990); Pogue v. State, 429 So.2d 1159 (Ala.Crim.App.1983). Rather, Chavers objected as soon as the trial court brought the matter to his attention post-trial. See Keibler-Thompson Corp., supra.
In this case, juror no. 216 was not qualified to serve on the jury, and he did not respond when asked about this statutory qualification requirement. Therefore, the trial court erred in denying Chavers's motion for a new trial on the ground that juror no. 216 was not qualified to sit on the jury. Accordingly, we reverse the trial court's judgment and remand this case for further proceedings.
REVERSED AND REMANDED.
WELCH and KELLUM, JJ., concur.
WINDOM, J., dissents.
MAIN, J., dissents, with opinion.
MAIN, Judge, dissenting.
I respectfully dissent from the majority's decision to reverse the trial court's denial of Larry Richard Chavers's motion for a new trial. The trial court issued thorough findings of fact concerning the residency requirement of juror no. 126, and ultimately concluded that he was qualified to serve based on § 12-16-60(a)(10), Ala.Code 1975, stating as follows:
"[B]ased on the Alabama Case law, as this court understands it, and this Court's findings of facts, the Court is reasonably satisfied that [juror no. 216] met and satisfied the residency requirement of Section 12-16-60(a)(1), and was therefore qualified to serve as a juror, in so far as said section is concerned. This Court finds accordingly."
(S.R.42.) Moreover, the trial court found that no probable prejudice has been shown to have resulted from juror no. 126's service and stated that "even if [juror no. 216] was disqualified under Section 12-16-60(a)(1) (and this Court has found that he was not), the Court finds that no probable prejudice has been established therefrom." (S.R.45.)
"Assessing the credibility of evidence presented at a new trial hearing falls to the trial judge because he is in the best position to evaluate the new evidence in light of all that has gone before. Peterson v. State, [426 So.2d 494 (Ala.Crim. App.1982) ]; Zuck v. State, 57 Ala.App. 15, 325 So.2d 531, cert, denied, 295 Ala. 430, 325 So.2d 539 (1976). Moreover, *845 the decision of the trial court will not be disturbed unless an abuse of discretion can be shown. Ward v. State, 440 So.2d 1227 (Ala.Crim.App.1983); Peterson v. State, supra; Robinson v. State, 389 So.2d 144 (Ala.Crim.App.), cert, denied, 389 So.2d 151 (Ala.1980); McBryar v. State, 368 So.2d 568 (Ala.Crim.App.), cert, denied, 368 So.2d 575 (Ala.1979); Page v. State, 57 Ala.App. 265, 327 So.2d 760 (1976)."
Perry v. State, 455 So.2d 999, 1003-04 (Ala.Crim.App.1984). See also Pace v. State, 904 So.2d 331, 342 (Ala.Crim.App. 2003).
I agree with the trial court's conclusions and find no abuse of discretion by the trial court in denying Chavers's motion for a new trial.
Here, the issue is whether juror no. 126 was a "resident" of Escambia County as that term is used in § 12-16-62, Ala.Code 1975. The exact requirements for "residency" as used in the context of jury service are not concrete, and the term has been defined by resorting to its common usage. It is clear that a person can establish more than one residence in many contexts, whereas a person has only one domicile. See Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685, 687 (1939) ("Under our concept of `domicile,' largely due to modern multiple residence situations, it was open to the trial judge to reach the conclusion that complainant was a legal resident of Alabama, and that her present sojourn in the State of Mississippi was temporary."). See also United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000) (in determining if police had a reasonable belief that address was suspect's residence to effectuate arrest, the court noted that "oftentimes university students or law clerks in their twenties use their parents' address while studying or clerking" so that even if his parents' address was his " `permanent address' in some sense, that is not inconsistent with [his] residence" being at another location). Cf. Mitchell v. Kinney, 242 Ala. 196, 208, 5 So.2d 788, 799 (1942) ("`Every person is presumed, moreover, to have a domicil somewhere; and although he may, in some instances, have a domicil in one place, and a residence in another, or, as is sometimes said, two residences for the purposes of business; yet he can not have more than one domicil at the same time, for the purpose of succession.'"). "Domicile" is a more definite term and has been defined as "`[t]he place at which a person is physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."' Ryan v. State, 865 So.2d 1239, 1243 n. 4 (Ala.Crim. App.2003), quoting Black's Law Dictionary 501 (7th ed.1999).
"`A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition, a person can have but one domicile, [which] once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact.'
"Ex parte Weissinger, 247 Ala. 113, 117, 22 So.2d 510, 514 (1945)."
Harris v. McKenzie, 703 So.2d 309, 313 (Ala.1997).
Looking to legislative intent, I note that, if this residency requirement had been intended to be more exact or more precisely determinable, the legislature could have required that the potential juror's domicile be in the county of the trial. "The Alabama Supreme Court has stated that for *846 purposes of § 12-16-60 less proof is required to prove residence than is required for purposes of proving domicile. See City of Orange Beach v. Perdido Pass Developers, Inc., 631 So.2d 850 (Ala.1993) (court held that county where driver's license was issued and county where mail was received proved county of residence for purposes of § 12-16-60)." Tyson v. State, 784 So.2d 328, 349 (Ala.Crim.App.2000).
"`"The word `residing' is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode.... It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence.... It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile.... While residence is a necessary component of domicile, residence is not always domicile. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word `reside' may correctly denote either the technical domicile, or the actual personal residence. The word `reside' is often used to express a different meaning according to the subject matter."'
"State Farm Mutual Automobile his. Co. v. Hanna, 277 Ala. 32, 37, 166 So.2d 872 (1964)."
Smith v. State, 612 So.2d 1314, 1315 (Ala. Crim.App.1992).
In determining a constitutionally proper way to select potential jurors for service, Alabama has enumerated several appropriate methods of compilation:
"The jury commission for each county shall compile and maintain an alphabetical master list of all persons in the county who may be called for jury duty, with their addresses and any other necessary identifying information. This list may include all registered voters, persons holding drivers' licenses and registering motor vehicles, and may include other lists, such as lists of utility customers and persons listing property for ad valorem taxation, which will include persons whose listing will foster the policy and protect the rights provided in Sections 12-16-55 and 12-16-56."
§ 12-16-57(a), AlaCode 1975. These methods of determining qualifications and selection of jurors may also be used as indicia of residency to qualify for service.
In Smith v. State, supra, the foreman of the grand jury lived in Houston County during the prosecution of the case, which took place in Geneva County; however, he was found to be a resident of Geneva County based on the following:
"`[T]he trial judge did not err in concluding that Mr. Enfinger was a "resident" of Geneva County. The facts indicating that Mr. Enfinger was a resident of Geneva County are as follows: He was born on his parents' farm in Geneva County. He later purchased that farm and either owns or has an interest in those 101 acres. His son was presently living on that farm. Mr. Enfinger was 68 years old and had lived on that farm with his first wife for 42 years. He received his mail in Geneva County. He was registered to vote in Geneva County. He did his banking, bought his groceries, and transacted most of his business in Geneva County. His motor vehicle driver's license was issued in Geneva County. He had been a lifelong resident of Geneva County and considered himself a resident of Geneva County and "a Geneva County boy." R. 38.
*847 "In Thomas v. State, [622] So.2d [415, 416-17] (Ala.Cr.App.1992), this Court decided this same issue, concerning this same foreman. In Thomas, we stated:
"Mr. Enfmger's connection with Houston County was that for approximately 13 months before the return of the indictment against the appellant, he had been living in a house in Houston County. That house was owned by his second wife and was located 300 yards from the Geneva County line. Mr. Enfinger testified that if his wife died he would move back to Geneva County."
Smith v. State, 612 So.2d at 1314-15. See also City of Orange Beach v. Perdido Pass Developers, Inc., 631 So.2d 850, 854 (Ala. Crim.App.1993) (juror who had been temporarily living in Mobile County met residency requirement of § 12-16-60, Ala. Code 1975, for Baldwin County; she received her driver's license in Baldwin County, her mail was delivered to her mother's house in Baldwin County, and she planned to return to Baldwin County in the near future.).
In this case, the juror had been employed at Reid State Technical College in Alabama for 15 years and maintained an Alabama driver's license. He had paid income taxes to Alabama for 30 years. He received his mail in Escambia County, Alabama, all four of his motor vehicles were registered in Escambia County, and he maintained a checking account in Escambia County. There was testimony that he spent three or four days out of a week at this residence in Escambia County. Although a family member and not juror no. 216 actually owned the house, residency does not require ownership. Moreover, juror no. 216's motivation of keeping his job does not negate his residency; it merely explains it.
Juror no. 216 also consistently stated that he believed that he resided in Alabama. Although a juror's belief that he was qualified to serve on a jury does not meet the requirements of § 12-16-60(a)(1), Ala.Code 1975, Keibler-Thompson Corp. v. Steading, 907 So.2d 435, 443 (Ala.2005), it is nonetheless a factor to be considered. See Smith v. State, 612 So.2d at 1314 (juror considered himself a resident of Geneva County). Yancey v. State, [Ms. CR-04-1171, March 20, 2009] ___ So.3d ___ (Ala.Crim.App.2009) (holding that potential juror was a resident of Russell County because he received his tax returns, was registered to vote, and received his license tags in Russell County). See also Greenwald v. State, 579 So.2d 38, 41 (Ala.Crim. App.1991) (trial court properly denied the motion for new trial finding that the juror was a resident of Marshall County, stating that "`[s]he testified that she has, at all times, considered herself a resident of Marshall County and maintained the apartment in Huntsville and her voting registration there only as a "matter of convenience."'").
In enacting the statutory qualifications for a juror, the legislature used the term "residence" rather than the more precise and defined term "domicile," without providing a definition of "residence." It is the providence of the legislature to make such determinations and they have done so where the repercussions of the determination are weightier. For example, the legislature established the place of voting in elections to be the elector's domicile. Harris v. McKenzie, supra. Section 17-9-10, Ala.Code 1975, establishes that "the elector shall vote in the county and voting place of his or her domicile...."
Finally, although "[t]he requirements of § 12-16-60 are mandatory" and the juror's qualifications are not matters within the trial court's discretion, Keibler-Thompson Corp. v. Steading, 907 So.2d at 441, a juror's residency outside the county of the *848 trial and his failure to truthfully respond to questions concerning his residency do not necessarily require a reversal. In Bufford v. State, 382 So.2d 1162, 1171-73 (Ala. Crim.App.1980), this Court addressed Bufford's claim that he was entitled to a new trial because one of the jurors who had heard his case was not a resident of Wilcox County but was a resident of Dallas County. The trial court in that case noted that there was no deceit by the parties nor was there any evidence indicating that "`the juror was interested in the outcome of the trial.'" Bufford v. State, 382 So.2d at 1172. The trial court further found that there was no evidence that Bufford was prejudiced in any way by this juror sitting on the case. Bufford v. State, 382 So.2d at 1172. This Court stated:
"Although a defendant has a right to have questions answered truthfully by prospective jurors, the failure of a juror to make a proper response to a question regarding his qualifications does not automatically entitle a defendant to a new trial. The proper inquiry by this court in such cases is whether the appellant's rights were prejudiced by the juror's failure to respond properly. Beauregard v. State, Ala.Cr.App., 372 So.2d 37 (1979), cert, denied, Ala., 372 So.2d 44, and cases cited therein. In Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), our supreme court stated:
"`We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant. This appears to be the general rule throughout the country [see Annotations, 38 A.L.R.2d 624, and 63 A.L.R.2d 1061]. . . .'
". . . .
"Had the juror made a truthful answer to the court's question on voir dire, she would have been subject to challenge for cause. However, the mere fact that she resided in an adjoining county does not per se require a reversal of this cause. Nonresidency in such a case does not impute prejudice per se. In fact there are times when nonresident jurors would be less likely to bear prejudice or bias against a defendant."
Bufford v. State, 382 So.2d at 1172. See McCollum v. State, 678 So.2d 1210, 1216 (Ala.Crim.App.1995) ("The appellant failed to show, as he must show in order to be entitled to a new trial, how he was prejudiced by the service of this nonresident juror. Ex parte Poole, 497 So.2d 537 (Ala. 1986.)."). See also Waiters v. Lawrence County, 551 So.2d 1011, 1015-16 (Ala. 1989); Latimore v. State, 534 So.2d 665, 668 (Ala.Crim.App.1988); Brown v. State, 392 So.2d 1248, 1264 (Ala.Crim.App.1980).
The fact that an appellant must show prejudice is clear based on the fact that his right to a properly selected jury for his trial falls under his right to a fair trial. "While it might be argued that if the state sought to unduly burden or restrict the classification or selection of jurors, it would be prohibited by the Constitution, the right protected would still only be the right to a fair trial." Williams v. State, 51 Ala.App. 1, 282 So.2d 349, 352 (1973). Where there is no challenge to a juror's qualifications or a juror's propriety to have served on a jury other than residency, there is no showing of a denial of a fair trial. This conclusion can be most readily reached as follows:
"`The most glaring analogy is in the case of a change of venue. Although the appellant did not request a change of venue in the instant case, our statutes nevertheless allow for such a procedure. Section 15-2-20, et seq., Code of Ala. *849 1975. In those cases where change of venue has been granted, an accused would be tried by a jury composed entirely of persons who were not residents of the county from which the case was transferred. Therefore, there is no inherent prejudice attributed to a trial by a nonresident or nonresidents of the county in which the offense was committed.'"
Vaughn v. State, 395 So.2d 97, 102 (Ala. Crim.App.1980).
Here, Chavers has shown no prejudice to his case caused by juror no. 216's service on the jury. Cf. Ex parte Jones, 753 So.2d 1211 (Ala.1999) (where member of grand jury was resident of Florida, the indictment was not void because objection was not timely raised and there was no prejudice shown). In fact, he did not raise this matter in the motion for a new trial; the trial court brought up sua sponte the possibility of the residency problem. After raising the matter and hearing the testimony of a number of witnesses concerning juror no. 216's residency, the trial court returned extensive findings of fact indicating a thorough consideration of this matter prior to making its determination. Chavers never claimed nor demonstrated prejudice. Pogue v. State, 429 So.2d 1159, 1160-61 (Ala.Crim.App.1983) (no inherent prejudice by a nonresident juror serving on Pogue's jury); Huckabaa v. State, 475 So.2d 891, 892-93 (Ala.Crim.App.1985) (no showing of prejudice by Huckabaa as a result of service on the jury of a juror who was a Virginia resident). As the trial court notes in its findings of fact following the remand of this case, although one of Chavers's attorneys was called to testify at the hearing, he was not asked whether he would have challenged juror no. 216 for cause or struck him if the challenge had been unsuccessful. (S.R.40.) He was also neither asked nor did he state that this juror's service prejudiced or possibly prejudiced Chavers. (S.R.40.)
Thus, because I believe the trial court properly determined that juror no. 216 resided in Escambia County, Alabama, for the purpose of the residency requirements of § 12-16-60, Ala.Code 1975, and further that Chavers has failed to show that he suffered probable prejudice as a result of this juror's service, I would affirm the trial court's denial of the motion for new trial. Therefore, I dissent.
NOTES
[1] T.G. is a female; W.G. is a male. Initials are used throughout the opinion to protect the anonymity of the victim, T.G. See Rule 52, Ala.R.App.P.
[2] The record does not indicate the name of the town in Florida.
[3] Juror no. 216 was not asked about, and he offered no explanation for, the discrepancy between the South Eighth Avenue address listed on the master jury roll and the Tatum Avenue address he testified to during the hearing on the motion for a new trial.
[4] We note that our examination of the record indicates that the judge who presided over Chavers's trial and who heard the evidence offered in support of Chavers's motion for a new trial retired shortly after the hearing on the motion for a new trial. In the interest of judicial economy, the presiding circuit judge may wish to have that judge recalled for the limited purpose of entering the specific written findings of fact required, rather than have another trial judge conduct a new evidentiary hearing on Chavers's motion for a new trial and issue written findings following that hearing.